**Darryl KING, Petitioner-Appellant,**

v.

**Robert HOKE, Superintendent, Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents-Appellees.**

No. 1102, Docket 86–2275.

United States Court of Appeals,
Second Circuit.

Argued May 4, 1987.

Decided Aug. 6, 1987.

Myron Beldock, New York City (Beldock Levine & Hoffman, New York City, on the brief), for petitioner-appellant.

Ann Bordley, Asst. Dist. Atty., New York City (Elizabeth Holtzman, Dist. Atty., Barbara D. Underwood, Lisa Margaret Smith, Asst. Dist. Attys., New York City, on the brief), for respondents-appellees.

Before OAKES, NEWMAN, and PIERCE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal primarily presents the issue whether a sentencing judge's incorrect understanding of a defendant's minimum statutory parole eligibility date deprives the defendant of due process at sentencing. The issue arises on an appeal by Darryl King from a judgment entered in the District Court for the Eastern District of New York (Thomas C. Platt, Judge) denying his petition for a writ of habeas corpus to challenge his New York state sentence for a 1971 felony murder conviction. Judge Platt denied the petition for abuse of the writ, finding that King could have raised the issue in either of his two previous petitions for habeas corpus. Under the circumstances of this case, we reverse and remand to the District Court with instructions to grant the writ unless the State promptly arranges for resentencing.

### Background

On May 24, 1971, after a jury trial in King's County Supreme Court (John R. Starkey, Justice), King was found guilty of the murder of an off-duty police officer, second-degree manslaughter, attempted robbery in the first degree, attempted grand larceny in the third degree, first-degree assault, and possession of a dangerous weapon.

A hearing was held on April 23, 1971, to determine whether the jury would impose the death penalty or life imprisonment. Under New York law then applicable, if the jury did not impose the death penalty, the defendant was sentenced to life imprisonment; the judge determined, within statutory limits, a minimum period of imprisonment (MPI) after which the defendant would be eligible for parole. During the punishment hearing, Justice Starkey instructed the jury about the parole aspects of a sentence of life imprisonment, stating incorrectly that the minimum parole eligibility date could be one-third less than the minimum sentence imposed by the judge:

> [T]he Court is mandated to explain to you the law relating to the possible release or parole of a prison sentence to life imprisonment, and it reads that murder is a Class A felony. Section 70.00 of the Penal Law, Subdivision 2(a) states: "For a Class A felony, the term shall be life imprisonment."
>
> Subdivision 3(a) states: "In the case of a Class A felony, the minimum period shall be fixed by the Court [and] specified in the sentence. Such minimum period shall not be less than 15 years nor more than 25 years."

> .    .    .    .    .

> Then we come to the Correction Law and Section 230, Subdivision 2, states that any person sentenced to an indeterminate term may receive a maximum reduction in his sentence of four months a year from the minimum sentence, but nothing in the law shall be construed to confer any right whatsoever upon any prisoner to demand or to require the whole or any part of such reduction. Do you understand that? He may get four months a year off, but he may not.

> Therefore, it would be possible for a defendant who has been sentenced to life imprisonment to be placed on parole af-

ter he has served two-thirds of the minimum sentence which shall be fixed by the Court.

Let us assume I give him a sentence of 24 years to life. Two-thirds of that 24 would be 16 years. He could be eligible for parole after serving the 16 years. If it is 25 years to life, then it would be 8 months more before he would be eligible for parole; four months off the additional year.

Now as I have indicated, the minimum sentence shall not be less than 15 nor more than 25, and if you return a verdict of life imprisonment, I must impose such sentence of between 15 and 25 years to life; and the defendant may be paroled after he serves two-thirds of the minimum sentence imposed. As I have told you, he does not necessarily have the right to be paroled, but he is not eligible for parole before that time.

N.Y.Correct.L. § 230(2) (McKinney 1987), on which Justice Starkey based his remarks about possible reduction of the MPI, had been repealed prior to King's trial and sentencing with respect to crimes committed after September 1, 1967, and was therefore not applicable to his crimes. *See id.* note. Under the statutes applicable to King, N.Y.Correct.L. § 803(1) (McKinney 1987), N.Y.Penal L. § 70.40(1)(a) (McKinney Supp.1987), he would not be eligible for parole until he served all of his minimum sentence. The jury voted for life imprisonment.

On May 24, 1971, Justice Starkey imposed a life sentence and set the MPI at 25 years, the highest point allowable. At the sentencing Justice Starkey made no explicit reference to a possible reduction in the MPI. He did not state that the possibility of a reduction had influenced him to set the highest possible MPI. On the other hand, he did not state that he had learned that his instruction to the jury concerning reduction of the MPI was erroneous and that he was nonetheless selecting the highest allowable MPI with awareness that it could not be reduced. Prior to the imposition of sentence, neither the prosecutor nor defense counsel brought to Justice Starkey's attention his previously expressed misunder-

standing of the MPI provision. The record suggests they both were unaware of the repeal of section 230(2).

King attacked his conviction both on direct appeal and through numerous collateral procedures. He filed four state motions to vacate his judgment of conviction and two previous federal habeas petitions. He was granted one state post-conviction hearing and two federal habeas hearings. In none of these proceedings did he challenge the constitutionality of his sentence. All of his challenges to his conviction were rejected.

Fourteen years after he was sentenced, King learned for the first time of Justice Starkey's error concerning the MPI. In 1985, in expectation of being eligible for parole within two years, King requested transfer to a pre-parole facility. He was then told that he was not eligible until 1995, when he would have served his minimum sentence. King immediately applied to the New York state courts to set aside the sentence, arguing that it had been illegally imposed or was invalid because Justice Starkey had relied on a repealed statute. The Supreme Court denied the motion because "nothing in the record indicates the Court concerned itself with parole consideration at the time of sentencing." The Appellate Division denied King permission to appeal further.

King then filed his third petition for a writ of habeas corpus in the Eastern District of New York, contending that Justice Starkey's error regarding the applicable parole law violated his constitutional rights and that he was denied effective assistance of counsel because his trial counsel failed to introduce certain relevant evidence. Judge Platt dismissed the petition for abuse of the writ. He later explained that King's petition had been dismissed and held to be meritless "[b]ecause the facts and bases for these claims were available and known to petitioner at the time of his prior habeas corpus hearing in this court." This Court granted a certificate of probable cause to appeal only the sentencing claim. *See Vicaretti v. Henderson,* 645 F.2d 100 (2d Cir.1980), *cert. denied,* 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981).

## Discussion

### I. Dismissal of the Petition

The initial question on this appeal is whether the District Judge acted within his discretion in dismissing King's petition for abuse of the writ. A district court has discretion to dismiss a habeas application if it is a successive petition that raises new claims that should have been asserted in an earlier petition, Rule 9(b), Rules Governing Cases in the United States District Courts Under Section 2254 of Title 28, United States Code ("§ 2254 Rules"), or if the delay in filing the petition prejudices the state in its ability to respond, Rule 9(a), § 2254 Rules. Because Judge Platt based his dismissal on both of these grounds, we consider each in turn.

The rule permitting dismissal of successive petitions on new claims is directed primarily at petitioners who deliberately withhold one of several grounds in an earlier petition or who use successive petitions to vex, harass, or delay. Rule 9, § 2254 Rules, advisory committee's note; *see Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). The District Court did not find that King filed the pending petitions with such abusive intent. However, it held that because the facts and bases for King's challenge were available to him from the time he was sentenced, King had constructive knowledge of his sentencing claim at the time he filed his earlier petitions. The State invites us to affirm this decision, arguing that King's failure to raise the claim was inexcusable.

■ Although this petition is successive, we believe that under the unusual circumstances of this case, King's belated challenge to his sentence is not an abuse of the writ. King should not be faulted for relying on a New York Supreme Court Justice's statement of New York parole law where, as here, the State prosecutor as well as defense counsel shared the misunderstanding. Unlike most trial court errors that may be expected to be challenged during the course of direct review or prompt collateral attack, the Justice's in-

correct understanding of the MPI calculation was not likely to be of any concern to petitioner until just prior to the time of his anticipated parole eligibility. Upon first learning that he would not be eligible for parole after serving two-thirds of his minimum sentence, as the trial judge had stated during the jury charge, King promptly initiated proceedings for relief. We believe that King's failure to raise the issue earlier is excusable and that the District Judge exceeded his discretion in finding an abuse of the writ in these circumstances.

The petition might nevertheless warrant dismissal if its belatedness seriously prejudices the State's ability to respond. The State argues that it suffers such prejudice here, primarily because the deaths of Justice Starkey and the prosecutor preclude the State from rebutting King's claim that Justice Starkey relied on a mistake of law at sentencing. Moreover, after this fifteen-year delay, defense counsel and Justice Starkey's former law clerk cannot recall whether parole eligibility was an issue at the sentencing hearing. Had the claim been filed promptly, the State contends, Justice Starkey might well have been able to resolve this question.

■ We believe that King's delay does not pose any substantial burden on the State. First, we can fairly assess the claimed error based on the transcripts. *Cf. Strahan v. Blackburn*, 750 F.2d 438, 441 n. 4 (5th Cir.) (in majority of Rule 9(a) cases where prejudice found by appellate courts, transcripts or records were not available), *cert. denied*, 471 U.S. 1138, 105 S.Ct. 2683, 86 L.Ed.2d 700 (1985). Second, the claimed error does not affect the trial itself but only the sentencing proceedings. The State might well be substantially burdened were it required to undertake a retrial more than fifteen years after the conviction. However, at a resentencing proceeding, the State has no burden of persuasion concerning the setting of an MPI, which is the only matter in dispute. The State need not call any witnesses nor present any evidence. The successor judge will be able to resentence and select an appropriate MPI by reading the presentence report and, if necessary, the trial transcript. Though the State has lost the opportunity to elicit from

Justice Starkey his recollection of the sentencing proceeding, which might have shown that he had either corrected his misunderstanding of the MPI provision before the sentencing or selected a sentence without any consideration of the MPI provisions, the likelihood that a busy state trial judge would recall such detail even a reasonable time after imposing sentence is too speculative to justify forgoing consideration of the merits of this petition. Under these circumstances, we conclude that the District Court exceeded its discretion in dismissing the petition under Rule 9(a) because of prejudice to the State.

## II. The Constitutionality of King's Sentence

It is well established that "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir.1970) (citing *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948)). This Court has stated that for a sentence to be unconstitutional, actual reliance on the erroneous information need not necessarily be shown. *See United States v. Robin*, 545 F.2d 775, 779 n. 12 (2d Cir.1976). In *McGee v. United States*, 462 F.2d 243 (2d Cir.1972), we set aside a sentence after concluding that the sentencing judge's reliance on an improper factor was "quite probable." *Id.* at 246.

■ We have no doubt that had Justice Starkey explicitly relied on the repealed statute in selecting King's sentence, the sentence would be tainted. For example, if the sentencing judge had said he was motivated to select a 25–year minimum sentence in part in the mistaken belief that such an MPI was necessary to ensure that King would serve at least seventeen years, the eight extra years of the minimum sentence would have been invalidly imposed. In fact, Justice Starkey made no explicit reference to the possibility of a reduction in the MPI. Nevertheless, he plainly had an incorrect view of the applicable parole law just one month before sentencing, a view

he held with sufficient certainty to inform the jury. Moreover, in illustrating to the jury his incorrect view of the law, he used a minimum sentence of 25 years—precisely the MPI he imposed on King a month later. We believe that the unequivocal evidence of Justice Starkey's erroneous view of the parole law one month before sentencing, his use of a 25–year MPI to illustrate his view, and the absence of any indication that he learned of his error before sentencing raise a sufficient indication of at least partial reliance to establish a constitutional defect in the sentence. *See United States v. Robin, supra; McGee v. United States, supra.* Though a state court judge is accorded a presumption of acting in accordance with law when his rationale for reaching a decision is not set forth, *see Harris v. Rivera*, 454 U.S. 339, 347, 102 S.Ct. 460, 465, 70 L.Ed.2d 530 (1981), that presumption is not available when the judge makes clear in an erroneous instruction to a jury that he has an incorrect view of applicable law bearing upon sentencing. "[T]he district judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts, *in the absence of evidence ... that there is reason to suspect that an incorrect standard was in fact applied.*" *Townsend v. Sain*, 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963) (footnote omitted) (emphasis added). Particularly in light of the insubstantiality of the State's interest in avoiding resentencing, we conclude that the writ should be granted unless the State arranges for resentencing.

The State argues that King's claim of a constitutional defect is foreclosed by *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), which stands for the proposition that a sentencing judge's reliance on a misunderstanding or erroneous prediction concerning the defendant's future parole will not invalidate a sentence. *See United States v. Dean*, 752 F.2d 535, 544–45 (11th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); *United States v. Coyer*, 732 F.2d 196 (D.C.Cir.1984). *Addonizio* is inapposite. In that case a judge selected a

sentence under the incorrect assumption that the Parole Commission would favorably exercise its discretion to release the prisoner after he served one-third of a ten-year sentence. *United States v. Addonizio, supra,* 442 U.S. at 181 n. 3, 99 S.Ct. at 2238 n. 3. The Supreme Court upheld the sentence, explaining that subsequent actions within the discretion of the Parole Commission do not affect the validity of the judgment itself. In *Addonizio* the sentencing judge had made an incorrect prediction of how the Parole Commission would exercise its discretion. By contrast, in the pending case, the sentencing judge made an "objectively ascertainable error," *id.* at 187, 99 S.Ct. at 2241, about King's minimum statutory parole eligibility date, a matter of law rather than a prediction concerning an agency's discretion.

### Conclusion

For the foregoing reasons, we reverse the judgment of the District Court and remand with directions to enter an order conditionally vacating King's sentence unless the State arranges for resentencing within ninety days.