**Keith GAYLE, Petitioner–Appellant,**

**v.**

**Louis MANN, Superintendent, Shawangunk Correctional Facility, Respondent–Appellee.**

**No. 1102, Docket 91–2371.**

United States Court of Appeals, Second Circuit.

Argued April 24, 1992.

Decided June 5, 1992.

Georgia J. Hinde, New York City (Vivian Shevitz, of counsel), for petitioner-appellant.

Jay L. Weiner, Asst. Dist. Atty., Brooklyn, N.Y. (Charles J. Hynes, Dist. Atty., Kings County, Jay M. Cohen, of counsel), for respondent-appellee.

Before OAKES, Chief Judge, KEARSE and WALKER, Circuit Judges.

OAKES, Chief Judge:

Keith Gayle, a prisoner, appeals from a June 10, 1991 order of the United States District Court for the Eastern District of New York, Raymond J. Dearie, *Judge*, dismissing his *pro se* petition for a writ of habeas corpus seeking relief from his maximum state court sentence on the ground that the petition constituted an abuse of the writ. 28 U.S.C. § 2244(b) (1988); Rule 9(b) of the Rules Governing § 2254 Cases. We granted a certificate of probable cause and appointed counsel to represent Gayle on appeal. For the reasons set forth below, we vacate the order of the district court, and the judgment entered pursuant thereto, and remand for further findings of fact.

## I. Background

Gayle, a native of Jamaica, was convicted following a jury trial of second degree murder for the shooting death of Dennis Nunes at a New Year's celebration in Brooklyn, New York in the early morning hours of January 2, 1972. Gayle was 19 years old at the time of the offense. The conviction was his first. On October 28, 1974, Gayle was sentenced to the maximum term, 25 years to life imprisonment.

This appeal involves the third habeas petition filed by Gayle stemming from his conviction.[1] In the current petition, Gayle

---

**1.** In his first habeas petition, Gayle was unsuccessful in seeking relief from his conviction on the ground that the state trial judge's biased conduct deprived him of a fair trial. *See Gayle* *v. LeFevre,* 613 F.2d 21, 22–23 (2d Cir.1980) (Gayle's fair trial claim was unexhausted because it was not clear the fair trial issue was raised in federal constitutional terms before the

seeks not to overturn his conviction but to have his maximum sentence vacated unless the State of New York resentences him within 90 days. In the petition, he claims that he was not afforded due process in sentencing because "[t]he pre-sentence report upon which the sentence is predicated contained inaccurate, false and unreliable information, which state [sic] in part that I am a member of the Rastafarians, a Jamaican mafia enforcement association, and that I was one of ten gunmen who terrorized the NYC Jamaican community and who were responsible for over 300 deaths." Gayle has been serving this sentence for almost 18 years.

The pertinent aspects of Gayle's sentencing proceeded as follows. After Gayle and the prosecutor declined to make statements, defense counsel spoke on Gayle's behalf and urged the judge to "exercise every discretion and mercy that is within your power to do so and give [Gayle] the opportunity, after having paid the penalty in this case, to go out and make a life for himself." The sentencing judge, who was also the trial judge, then recounted trial testimony about the offense and the subsequent arrest of Gayle. The judge then proceeded to mention information about Gayle contained in the presentence report of the Probation Department, which under New York law at the time was unavailable to the defendant. The following colloquy between the judge and defense counsel ensued, during which the judge revealed certain allegations about Gayle which were incorporated in the presentence report:

THE COURT: Now, there was considerable information placed before the Probation Department as to this defendant's back-

ground. It doesn't make any difference to me whether what they say is correct or not but based upon the information gathered by the Probation Department, it appears that both this defendant and his victim Dennis Nunez had very bad reputations within the Jamaican community here in the City of New York and there is quite a sizeable community of Jamaicans in New York City. As a matter of fact, one of the witnesses who testified for the prosecution characterized both of them as outlaws who were part of a criminal element which attach[es] itself to the Rastafarian sector movement here and in Jamaica. This is an organization of terrorists.

MR. GALIEN [Defense Counsel]: Judge—

THE COURT: I'm only telling you—Mr. Galien, you don't seem to understand me. I don't say it's true. I couldn't care less at this point whether it's true or not. I'm imposing sentence based upon the jury's findings that this defendant committed the crime of murder. I'm simply referring to what the Probation Department has placed before me.

MR. GALIEN: I know because they made a statement that testimony of a prosecution witness was that and it didn't happen. It's not the testimony that was made by—

THE COURT: Do you say a prosecution witness by the name of David Leslie Jones did not testify that this man shot Dennis Nunez?

MR. GALIEN: My recollection is that he said he shot him but he didn't say he was a member of—

THE COURT: I never said he did.

state court on direct appeal); *id.* at 25 (Oakes, J., dissenting, "[D]efendant's claim that he had been denied his right to a 'fair trial' must be treated as equivalent to a claim that he had been denied due process of law" and further explaining that the unfair trial claim was meritorious).

Gayle then returned to state court to clarify that he had exhausted his federal constitutional claim. After exhausting his remedies in state court, Gayle filed a second habeas petition in 1982 renewing his unfair trial claim.

The second petition was denied on the merits. *Gayle v. Scully,* 779 F.2d 802, 813 (2d Cir.1985) (Trial judge's conduct was "unwarranted" and

"sometimes even offensive," but the trial was not beyond "constitutional parameters of fairness"); *id.* at 820 (Oakes, J., dissenting, "Gayle did not have a fair trial as a result of the excessive, biased intrusion of the trial judge," and providing extensive examples from the trial transcript of "[t]he judge's frequent interference," "[t]he judge's disparate treatment of defense and prosecution counsel," "[t]he judge leap[ing] to the aid of the prosecution witnesses time and again," and "[t]he judge talk[ing] down to the defense [counsel]."), *cert. denied,* 479 U.S. 838, 107 S.Ct. 139, 93 L.Ed.2d 82 (1986).

MR. GALIEN: —of the Ras[t]afarians.

THE COURT: Mr. Galien, you just refuse to understand what I'm saying. It's very disconcerting. You know it has often been said one can impart knowledge but not understanding.... I'm trying to get you to understand I never said the witness testified to that effect. I simply said the Probation Department which is charged with the obligation of making a complete investigation of the background and the life of one who is about to be sentenced tells me that their information is that he was attached to such a group. I never said there was anything like that before the jury. Jones testified and another witness testified and there was evidence presented to the jury upon which the jury found that this defendant had shot and killed Dennis Nunez. The jury decided that when this defendant shot and killed Dennis Nunez, he did so with intent to cause the death of Dennis Nunez. That is murder and therefore, the jury found the defendant guilty of the crime of murder. The sentence of the Court is that this defendant be committed to the State Department of Correctional Services to serve a sentence of a minimum of twenty five years and a maximum of life imprisonment. All right.

Gayle claims that, although he was aware from the judge's remarks during the sentencing hearing that his presentence report contained allegations of his connections to a criminal element of Rastafarian terrorists, he was not aware of the extent of the allegations in the report. He now believes that there were other serious allegations in the presentence report, beyond the allegation that he was a member of a Rastafarian terrorist organization, which were not disclosed by the judge and upon which the judge relied in arriving at his maximum sentence. He bases his suspicion on his accidental discovery of a *prison report* from the Green Haven Correctional Facility dated March 8, 1978 regarding his behavior in prison. The report states:

> Gayle has quite extensive background whether real or imagined, according to witness this inmate was a member of the

Ras Tafarians [sic], a Jamaican Mafia Enforcement Association. According to a witness, Gayle was one of ten gunman [sic] who terrorized the Jamaican community in New York City, supposedly responsible for over 300 deaths.

Gayle believes that the presentence report contained this allegation that Gayle was one of ten gunmen who were responsible for the deaths of over 300 people in the New York City Jamaican community, and that the sentencing judge relied upon this alleged misinformation in arriving at his sentence.

Based on this concern, Gayle first sought relief from his sentence under New York law by filing a motion to vacate his sentence pursuant to N.Y.Crim.Proc.Law § 440.20(1) (McKinney 1983). After exhausting this state law remedy, Gayle returned to federal court in January 1991, and filed *pro se* the instant habeas petition seeking his release if he is not resentenced without reliance on the prejudicial misinformation that was before the sentencing judge.

A few weeks after the state filed its opposition to the petition on the merits, the Supreme Court set down new standards governing the doctrine of abuse of the writ. *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Based on *McCleskey,* the district court dismissed Gayle's petition *sua sponte* as an abuse of the writ by an order entered on June 10, 1991. A certificate of probable cause issued, this appeal was filed, and counsel was appointed to represent Gayle on appeal.

## II. Discussion

In *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991), the Supreme Court revised the standard for determining whether a petitioner has abused the writ of habeas corpus. 28 U.S.C. § 2244(b); Rule 9(b) of the Rules Governing § 2254 Cases. The Court held that a "petitioner may abuse the writ by failing to raise a claim through inexcusable

neglect."[2] 111 S.Ct. at 1468. Accordingly, a successive petition setting forth a new claim will only be heard if the failure to raise the claim in the petitioner's first petition can be excused. The Court further explained:

To excuse his failure to raise the claim earlier, [the petitioner] must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions.... If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*Id.* at 1470.

The district court concluded that Gayle could not show cause for the failure to raise the claim that his sentencing procedure violated his federal constitutional due process rights in his two prior habeas petitions, *see King v. Hoke,* 825 F.2d 720, 724 (2d Cir.1987) (due process rights violated where it is "quite probable" reliance on *misinformation occurred in sentencing procedure),* given that "[t]his claim appeared on the face of the sentencing record." The district court obviously believed that Gayle knew enough information at the conclusion of his sentencing on which to base his current claim because, during sentencing, the judge revealed that Gayle's presentence report contained the allegation that he was connected to a Rastafarian terrorist sect.

We disagree with the district court's conclusion that the sentencing record provides a sound basis for concluding that Gayle did not show cause for the failure to raise his current sentencing claim in his two earlier habeas petitions. In the instant habeas petition, Gayle states that his presentence report contained a false allegation that he was "a member of the Rastafarians, a Jamaican mafia enforcement association, and that I was one of ten gunmen who terrorized the NYC Jamaican community and who were responsible for over 300 deaths." Gayle learned from the sentencing proceeding of the charge in his presentence report that he was part of a criminal element attached to a Rastafarian sector movement. However, there was no mention at sentencing of an additional allegation in the presentence report that he was one of ten gunmen responsible for over 300 deaths in the New York City Jamaican community. If this second allegation was contained in the presentence report, the sentencing judge may have relied upon it in imposing the maximum sentence on Gayle. Therefore, the district court should not have dismissed Gayle's current petition as an abuse of the writ based on the face of the sentencing record. The second more devastating allegation, identical to the statement in Gayle's 1978 prison report, may also have been part of his presentence report, but remained undisclosed at his sentencing.

Unfortunately, however, the district court did not determine whether the presentence report contained the second allegation that Gayle subsequently discovered in the 1978 prison report or when he discovered that prison report. In the absence of specific findings on these questions, we simply cannot sanction the district court's dismissal of Gayle's third habeas petition as an abuse of the writ.

We also reject the state's contention that the 1978 prison report simply constitutes later discovered evidence of the same claim. *Cf. McCleskey,* 111 S.Ct. at 1472 ("If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim."). Here, the trial

---

**2.** Justice Marshall wrote in dissent: "Without even the most casual admission that it is discarding longstanding legal principles, the Court radically redefines the content of the 'abuse of the writ' doctrine, substituting the strict-liability 'cause and prejudice' standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for the good-faith 'deliberate abandonment' standard of *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)." 111 S.Ct. at 1477.

judge repeatedly disclaimed reliance upon the specific allegation in the presentence report which he revealed. Gayle was entitled to rely on these disclaimers. Therefore, until discovering the hidden allegation in the 1978 prison report, Gayle did not have grounds to challenge his sentence.

The district court's order is therefore vacated. On remand, the district court must determine whether Gayle's presentence report contained the allegation contained in the 1978 prison report—that Gayle was part of a Jamaican mafia enforcement association and was one of ten gunmen responsible for the deaths of over 300 individuals in the Jamaican community of New York City. We note for the benefit of the district court on remand that the state conceded during oral argument that the presentence report contained the allegations revealed in the 1978 prison report, and that Gayle had no right under New York law to see the presentence report at the time of his sentencing.

In addition, the district court should determine when Gayle discovered the 1978 prison report containing the new allegation. If Gayle discovered the prison report before he filed his second habeas petition in 1982, then he would have to show cause why this claim was not raised at that time.

We also note in passing that the district court dismissed Gayle's habeas petition without notice. In *McCleskey*, the Court explained:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ.

111 S.Ct. at 1470. The district court disregarded the state's failure to plead abuse of the writ because *McCleskey* was handed down after the state's response was filed. However, Gayle should have been given an opportunity to show that he did not know of the present ground at the time of his prior petitions. Under the district court's approach, Gayle suffered under the new relaxed standard for defining abuse of the writ, but did not benefit from the Court's pronouncement that abuse of the writ must be pleaded with particularity. Presumably, these two elements of the abuse of the writ doctrine work hand in hand. The substantive standard is relaxed, but in return the state has to plead abuse of the writ with particularity to give the defendant an opportunity to respond.

For these reasons, it is hereby ordered, adjudged, and decreed that the order of the district court dismissing appellant Gayle's petition for a writ of habeas corpus is vacated, and the case is remanded for further findings of fact consistent with this opinion.