**UNITED STATES of America**

v.

**Jeffrey P. HOLLENBECK, Defendant.**

**No. 96–CV–497.**

United States District Court,
N.D. New York.

June 25, 1996.

---

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, New York (Grant C. Jaquith, Assistant U.S. Attorney, of counsel), for U.S.

Jeffrey P. Hollenbeck, Morgantown, West Virginia, pro se.

MUNSON, Senior District Judge.

### MEMORANDUM–DECISION AND ORDER

Presently before the court is defendant's second pro se motion to reduce his sentence of incarceration. The first motion was predicated on the retroactive amendment by the United States Sentencing Commission of the guideline method for measuring the metric quantity of marihuana yielded by a marihuana plant. Memorandum–Decision & Order ("MDO"), Document ("Doc.") 21.[1] Familiarity with that motion and the decision therein is assumed. The instant motion has been decided on submission.

### I. BACKGROUND

On May 3, 1995 defendant pled guilty to one count of violating 21 U.S.C. § 841(a)(1) by manufacturing and possessing with the intent to manufacture 99 marihuana plants. On August 2, 1995 defendant was sentenced to 46 months imprisonment. Judgment, Doc. 16. That sentence was commenced on August 30. On November 1, 1995, the retroactive amendments to the marihuana sentencing guidelines went into effect.

On December 6, 1995 defendant moved pursuant to 18 U.S.C. § 3582(c)(2) for modification of his sentence. Def.'s Mot., Doc. 18. This court granted the motion on February 2, 1996. MDO, Doc. 21. After making the necessary calculations, the court determined that the new range recommended by the sentencing guidelines was 15 to 21 months. *Id.* at 6.

Defendant was originally sentenced to the bottom of the applicable guideline range, and the court recommended him for the Bureau of Prisons Comprehensive Residential Drug Treatment Program ("Program"). Judg-

ment, Doc. 16. The court was therefore initially inclined to resentence defendant to the bottom of the new range: "Because the court originally committed defendant to the low end of the applicable range ... it may seem appropriate to resentence defendant to the new bottom end of 15 months." *Id.* at 6–7. However, concern arose that if defendant's sentence was reduced to 15 months, he might be unable to enroll in and complete the Program in the time remaining him. In January of 1996, the United States Probation Office, on behalf of the court, directed this question to the Bureau of Prisons. The Bureau responded that in order for defendant to undergo the Program, he would have to be resentenced to the top end of the new range, 21 months. *Id.* at 7.

Rehabilitative interests persuaded the court to reduce the term of incarceration from 46 to 21 months to facilitate defendant's completion of the Program:

> The defendant himself has stated that the crime he is currently incarcerated for resulted from his own drug habit. Presentence Investigation Report at 4, ¶ 10. Defendant admits "his drug addiction cost him a great deal in his personal life." *Id.* The court agrees that defendant's substance abuse history is significant. At one time or another, defendant has abused alcohol, marihuana, cocaine, heroin, amphetamines, and barbiturates. *Id.* at 8, ¶ 33.

MDO, Doc. 21, at 7.

Given defendant's history, the court decided that "resentencing defendant to a reduced prison term that still permits him to undergo the Drug Treatment Program satisfies both the need to protect society from defendant's future crimes, 18 U.S.C. § 3553(a)(2)(C), and the need to rehabilitate him, *id.* § 3553(a)(2)(D)." MDO, Doc. 21, at 7. The Comprehensive Residential Drug Treatment Program is a substantial 500–hour course of treatment which the court felt could have a very significant effect upon defendant's behavior, and consequently upon his future risk of recidivism. For these reasons and others

---

1. Unless otherwise noted, all references to docket numbers in this opinion are to Case Number 95–CR–71.

more fully explained in the prior opinion in this matter, this court—in reliance upon the Bureau's assurance that 21 months was sufficient—reduced defendant's sentence from 46 to 21 months. *Id.* at 9.

On March 2, 1996, one month after the entry of the court's decision, defendant submitted a written request to a staff member at the Federal Correctional Institution in Morgantown, West Virginia seeking entry into the Program. Ex. I att'd to Def.'s Mot., Doc. 23. Surprisingly, he was told that he did "not have enough time to take the Residential Drug Program." *Id.* A similar inquiry produced the same answer. Ex. II att'd to Def.'s Mot., Doc. 23. Defendant was enrolled in a more modest 40–hour program which he has already completed.

Defendant petitioned the court for another reduction of sentence on March 25, 1996. Def.'s Mot., Doc. 23. Defendant argues that because the court would have resentenced him to 15 months but for the desirability of allocating sufficient time to complete the Program, he should be resentenced again—this time to the bottom of the range. *Id.* at 2–3.

## II. DISCUSSION

The government was invited to respond on an expedited basis. The United States opposes any further reduction. They repeat arguments made in their opposition to defendant's first motion for reduction of sentence. *Compare* U.S.Mem.Law in Opp'n, Doc. 19 *with* Letter from Grant C. Jaquith, Doc. 25. To these objections, the court proffers the same answers it set forth in its prior decision, summarized in the margin.[2] The government also contends that there is no statutory basis for further reduction, *see*

U.S.Mem.Law. in Opp'n, Doc. 24, a more challenging argument which the court addresses now.

 The court believes that it can consider this motion pursuant to 18 U.S.C. § 3582(c)(2). It is true that in imposing an initial sentence, a court generally cannot modify it in the absence of a government motion more than seven days after passing judgment. Fed.R.Crim.P. 35(c). Analogously, one might argue that once the court resentences a defendant pursuant to section 3582(c)(2), the court cannot entertain a second motion under that statute absent another intervening retroactive guideline amendment. But section 3582(c)(2) does not explicitly limit the court's power to one modification. Moreover, the interests in finality underlying the limits on a district court's authority to modify an initial sentence are not as compelling in a case where there has already been one reduction.

 Alternatively, the court could interpret defendant's motion as one to correct sentence pursuant to 28 U.S.C. § 2255. Although defendant did not so characterize his motion, such an alternative reading is permitted by the rule that a pro se petitioner must be accorded "every reasonable opportunity to demonstrate a valid complaint." *Gould v. Russi,* 830 F.Supp. 139, 142 (N.D.N.Y.1993) (citing *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

 Defendant's failure to take a direct appeal from this court's February 2 decision does not procedurally bar him from a collateral attack upon his sentence. Although *Bil-*

---

**2.** The government emphasizes the seriousness of the crime and that defendant was a repeat grower. However, defendant's sentencing within the guideline range for a category III offender adequately reflects both the seriousness of the crime and defendant's recidivism. *See* MDO, Doc. 21, at 4–5. The government also renews its objection to reduction based on defendant's perjury in a pretrial release hearing. In its prior decision, the court noted that the U.S. attorney neither prosecuted defendant for perjury nor moved for an upward departure at sentencing based on obstruction of justice. Under these circumstances, the court declined to give the matter more attention than it was given originally. *Id.*

at 5. The government also observes that 99 plants is only one plant away from the statutory minimum penalty of five years. *See* 21 U.S.C. § 841(b)(1)(B)(vii). The court suspects though that the government would not be receptive to an argument from a 100–plant offender that he was only one plant above a much lower sentence. Under the current marihuana guidelines a first offender pleading guilty to a 99–plant offense could be sentenced to as little as ten months imprisonment. The same individual caught growing one more plant must serve six times as long (although the "safety valve" provision may assist a defendant in this predicament; *see* U.S.S.G. § 5C1.2).

*ly–Eko v. United States,* 8 F.3d 111 (2d Cir.1994), usually precludes claims not raised on appeal from being adjudicated in a section 2255 proceeding, such a failure will not frustrate review if the defendant can demonstrate "both cause for the procedural default and actual prejudice resulting therefrom." *Id.* at 113–14. In this case, defendant did not learn that the data the Bureau of Prisons had supplied the court was inaccurate until March 2, 1996. *See* Exs. I & II att'd to Def.'s Mot., Doc. 23. By the time the Bureau informed defendant that his 21 month sentence would in fact not be sufficiently long to complete the Program, the ten day time limit for filing an appeal had expired. *See* Fed. R.App.P. 4(b). Thus, defendant has demonstrated sufficient cause for his default. Prejudice is obvious: defendant will be imprisoned six months longer than he would have had the Bureau supplied the court with accurate information. We will proceed to the merits of the section 2255 argument.

■ A petitioner mounting a collateral attack upon a sentence bears the burden of establishing by a preponderance of the evidence that he is entitled to relief. *United States v. DiCarlo,* 575 F.2d 952, 955 (1st Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). Sentences may be modified in section 2255 actions in limited circumstances:

> [A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a "fundamental defect which inherently results in a complete miscarriage of justice."

*United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995). Defendant's situation in this case implicates either a fundamental error of fact or a constitutional due process error.

It is clear that the court's resentencing rested solely upon an erroneous factual determination. The Bureau of Prisons informed the court that a 21 month sentence would accommodate the Program, and shortly thereafter informed defendant the opposite was true. As is obvious from the February 2, 1996 opinion, the court relied completely on this misrepresentation. The issue then is whether the error was fundamental within *Bokun*'s meaning, or stated another way, whether the error rendered defendant's resentencing so "irregular and invalid" that collateral relief is appropriate. *United States v. Addonizio,* 442 U.S. 178, 186, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979). Such errors were addressable by writ of error coram nobis at common law. *See* 28 U.S.C. § 2255 1948 rev. notes. *See also United States v. Doe,* 867 F.2d 986, 988 (7th Cir.1989) (coram nobis still available to collaterally attack conviction for which petitioner has finished punishment; grounds alleged must be "type of defect that would have justified habeas corpus relief pursuant to 28 U.S.C. § 2255.").

■ The weight of authority endorses the theory that a petitioner who can demonstrate that the court relied on materially false information at sentencing is entitled to collateral relief. *See, e.g., Del Piano v. United States,* 575 F.2d 1066, 1067 (3d Cir.1978) (holding that upon proof that misinformation or improper data was considered at sentencing, the "process may be reexamined, the sentence vacated, and a new sentencing ordered."; granting relief), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Marsh,* 733 F.Supp. 90, 94 (D.Kan.1990) ("[A] sentence will be vacated if the challenged information is materially false or unreliable and demonstrably made the basis for the sentence."; but denying relief). As stated above, it is demonstrably obvious that the court relied wholly on erroneous information in resentencing defendant to 21 instead of 15 months.

Defects of this nature offend the Due Process Clause of the Fifth Amendment. *See United States v. Stevens,* 851 F.2d 140, 143 (6th Cir.1988) ("Convicted defendants, including those who plead guilty, have a due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information."); *Parks v. United States,* 832 F.2d 1244, 1246 (11th Cir.1987) ("Due process protects a defendant's right not to be sentenced on the basis of false information and invalid premises."). In considering defendant's previous motion

for sentence reduction, the court proceeded on the false premise that reducing the term of incarceration to 21 months would still facilitate completion of the Drug Treatment Program. This misrepresentation resulted in a sentence six months longer than would otherwise be the case, depriving defendant of the due process of law.

So important is the principle that a district court must retain the authority to correct sentencing errors it has made based on information that later proves inaccurate, some courts have even granted motions from the government for resentencing when it later appears that the defendant made material misrepresentations. *See United States v. Bishop*, 774 F.2d 771, 773–74 (7th Cir.1985) (court has inherent authority to correct judgments obtained by fraud).

The government cites the case of *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), as authority precluding relief in this matter. In *Addonizio* the district court granted a section 2255 motion based upon a change in Parole Commission policy occurring three years after petitioner was sentenced. *Id.* at 180–83, 99 S.Ct. at 2238–39. There was no indication that the sentencing judge acted on misinformation at the time of sentencing; rather he relied on accurate information that subsequently changed. If there was any error occurring at sentencing, it was the judge's assumption that Parole Commission practices were not subject to future revision. *Cf. id.* at 186, 99 S.Ct. at 2241 (claimed error was that "the judge was incorrect in his assumptions about the future course of parole proceedings").

The distinction between an inaccurate "prediction concerning an agency's discretion" and an "objectively ascertainable error" occurring at sentencing was emphasized in *King v. Hoke*, 825 F.2d 720, 724–25 (2d Cir. 1987). In that case, the judge at sentencing misunderstood an aspect of the New York state law of parole eligibility, and the defendant, learning of the error, sought a writ of habeas corpus in federal court. *Id.* at 721–222. The State raised *Addonizio* as a bar to

the petition. *Id.* at 724. The Second Circuit rejected this argument, characterizing *Addonizio* as "inapposite." *Id.* Instead, the panel held that post-conviction relief was proper, as it appeared the sentencing court explicitly relied on materially false information at sentencing. *Id.*

*King v. Hoke* is more akin to this matter than *Addonizio*. As in the former case, this court relied on information that was materially untrue at the time of sentencing. Like *King v. Hoke* this court's reliance on the inaccurate information was explicit. *Compare* 825 F.2d at 724 *with* MDO, Doc. 21, at 6–8. While *Addonizio* forbids post-conviction relief when the sentencing authority makes unreasonable assumptions about the future likelihood of parole and other discretionary matters, *King v. Hoke* affirms that the court's traditional power to correct sentences based upon information that was materially false at the time of sentencing is unchanged.

■ The court naturally recognizes that it lacks the authority to order that defendant be enrolled in a particular program or be imprisoned in a particular facility. *E.g.*, *United States v. Williams*, 65 F.3d 301, 307 (2d Cir.1995). However, the fact that the Bureau of Prisons retains discretion in these matters does not defeat defendant's petition. The Bureau did not accurately inform the court that 21 months would be sufficient, then later determine that defendant was unfit for the Program. Nor did it later transpire that there was no room for defendant. What did happen was that the Bureau's information proved to be materially false at the time of sentencing. Notwithstanding any discretion the Bureau exercises, defendant is entitled to be sentenced, or resentenced, based on accurate information.

In this case it does not appear that the Bureau intentionally misrepresented the truth to the court—more likely, one hand did not know what the other was doing. From the perspective of what process is due defendant under the Fifth Amendment however, the distinction between a mistake and a lie is of little moment.[3] Suffice it to say that the

---

3. From the perspective of the dignity of the

court's own processes however, a lie is more

argument that this court is without power to remedy a sentence it erroneously imposed in reliance on misinformation, whether innocent or not, originating from the executive branch of government cannot be sustained.

### III. CONCLUSION

Defendant's motion is GRANTED. It is hereby ORDERED that Jeffrey Hollenbeck's term of imprisonment be reduced by 6 months, that is, from 21 to 15 months. All other components of defendant's sentence as set forth in the Judgment, Doc. 16, including the term of supervised release, are unchanged.

It is so ordered.

---

repugnant. *See, e.g., Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944) ("It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.").