**Kevin L. BARDEN, Appellant,**

v.

**Patrick KEOHANE, Warden, Appellee.**

**No. 89–5712.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Jan. 19, 1990.

Decided Dec. 13, 1990.

As Amended Dec. 27, 1990.

As Amended Jan. 19, 1991.

Kevin L. Barden, Terre Haute, Ind., pro se.

Dennis C. Pfannenschmidt, U.S. Atty's. Office, Harrisburg, Pa., for appellee.

Before SLOVITER, HUTCHINSON and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

■ Kevin Barden (Barden), while a prisoner in the United States Penitentiary at Lewisburg, Pennsylvania, filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania on October 31, 1988.[1] The district court ordered the Penitentiary's Warden, Patrick Keohane (Keohane), to show cause why the writ should not be granted; but, ultimately, the district court denied Barden's petition. Barden filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). On reconsideration, the district court refused to disturb its order denying Barden's petition.

Barden filed a timely appeal, and the district court granted Barden's motion for leave to appeal *in forma pauperis.*

Barden is serving a twenty-year term of imprisonment for bank robbery. The government says Barden has almost seventeen years to go until completion of his federal sentence because his federal term could not begin until February 12, 1987, the day Barden arrived at a federal facility for service of his federal sentence. Before his arrival in federal custody, Barden had served more than ten years on state sentences that the state sentencing court intended to run concurrently with Barden's federal sentence.

Barden says the federal authorities made a mistake in failing to designate the state prison as the place of confinement for his federal sentence. This designation, he argues, is a necessary prerequisite to carrying out the intention of the state sentencing court that his state sentence be served concurrently with his federal sentence. Barden claims that the federal authorities can and should correct their mistake by a *nunc pro tunc* exercise of their power to designate the place of confinement, and that he has a right to have an administrative determination of this issue because he would be eligible for an earlier release if the state prison were designated *nunc pro tunc*[2] as a place for him to serve his federal sentence.[3] The federal government in-

---

1. On June 12, 1990, while this appeal from the district court's denial of Barden's petition was pending, without making application for a leave to transfer pursuant to Federal Rule of Appellate Procedure 23(a), Barden was transferred to the United States Penitentiary at Terre Haute, Indiana. Barden himself later notified the Clerk of this Court of that transfer. The Clerk, treating it as a simple change of address, did not notify the panel until the opinion was filed. Like the Sixth Circuit, we do not believe Barden's unauthorized transfer can affect our subject matter jurisdiction over this case. *See Cohen v. United States*, 593 F.2d 766, 767 n. 2 (6th Cir.1979). Other circuits have held that jurisdiction over a petition for a writ of habeas corpus is determined when the petition was filed. *Ross v. Mebane*, 536 F.2d 1199 (7th Cir.1976) (per curiam); *Harris v. Ciccone*, 417 F.2d 479 (8th Cir.1969) (Blackmun, J.), *cert. denied*, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970). We find those decisions persuasive. Accordingly, in the absence of an application for transfer pursuant to Rule 23(a), jurisdiction is retained and Keohane remains the respondent.

2. The Latin phrase *nunc pro tunc* describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect—a Latin term meaning literally, "now for then." An act *nunc pro tunc* is an "entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake." *Black's Law Dictionary* at 964 (5th ed. 1979).

3. We understand Barden to argue that he will be eligible for parole earlier if a *nunc pro tunc* designation is made. In a memorandum attached to his opening brief, Barden also refers to the version of the parole statute applicable to his offense. 18 U.S.C.A. § 4082(b) (West 1985), *repealed by* Comprehensive Crime Control Act of 1984, ch. 58, § 218(a), 98 Stat. 2027.

sists that all that matters is the date Barden was turned over from state to federal custody and that the intention of the state court that Barden's state sentence run concurrently with his federal sentence is immaterial.

■ We agree with Barden that the federal government has the statutory authority to make the *nunc pro tunc* designation Barden desires. On this record, Barden is entitled to a writ of habeas corpus to compel the Bureau to consider his case. We do not pass upon Barden's contention that he is entitled to a favorable exercise of the broad discretion the Federal Bureau of Prisons (Bureau) has in acting on his request. Instead, we hold only that the federal authorities have an obligation, on the peculiar facts before us, to look at Barden's case and exercise the discretion the applicable statute grants the Bureau to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*.[4] The answer to that question will depend on the Bureau's practice in making such designations, as well as its assessment of Barden's conduct in custody, the nature of his crime and all the other factors that govern penal authorities' consideration of a prisoner's request for relief from the strict enforcement of his sentence.

We will therefore remand this matter to the district court with directions that it in turn remand the matter to the Bureau so that the Bureau can promptly review Barden's claim and thereafter act to grant or deny it in accordance with the broad discretion the Bureau is given by the applicable statute. *See* 18 U.S.C.A. § 4082(b) (West 1985). Any further court review of the Bureau's action will be limited to abuse of discretion.

## II.

On April 28, 1975, Barden was arrested by Pennsylvania authorities and charged with robbery, rape and kidnapping. While awaiting trial on the state charges, Barden was given over to the custody of federal authorities on October 21, 1975, under a writ of habeas corpus *ad prosequendum*. He was sentenced to a prison term of twenty years on a bank robbery conviction by the United States District Court for the Western District of Pennsylvania and then returned to state custody.

The Court of Common Pleas of Beaver County, Pennsylvania, sentenced Barden to a term of eleven-to-thirty years on the state charges on November 12, 1975, and ordered that the state sentence run concurrently with the federal sentence. Barden then began to serve his state sentence in the State Correctional Institution at Rockview, Pennsylvania, where a federal detainer was lodged against him. On April 6, 1976, an additional state sentence of one-to-five years, consecutive to the previous state sentence of eleven to thirty years, was imposed on Barden on other charges. Barden was paroled from state custody on December 15, 1986, and turned over to federal authorities under the detainer. He entered the Lewisburg Penitentiary on February 12, 1987, and began serving his twenty-year federal sentence for bank robbery.

Beginning May 7, 1987, Barden, attempting to gain credit for the time he served in state prison by having the State Correctional Institution at Rockview designated a federal facility *nunc pro tunc*, sought administrative relief from the Bureau. When these efforts failed, he sought judicial relief in the district court.

## III.

The district court had jurisdiction over Barden's habeas corpus petition pursuant to 28 U.S.C.A. § 2241 (West 1971). Barden's petition is actionable under § 2241 because he is in custody and he attacks the term of that custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973); *Braden v.*

---

**4.** We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently. *See U.S. Const.* art. VI, cl. 2.

*30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126, 35 L.Ed.2d 443 (1973); *Peyton v. Rowe,* 391 U.S. 54, 66–67, 88 S.Ct. 1549, 1555–56, 20 L.Ed.2d 426 (1968); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 806–10 (D.C.Cir. 1988) (in banc) (habeas action under § 2241 proper and exclusive remedy to compel consideration of federal prisoner's claim that prison authorities failed to properly aggregate consecutive sentences in determining parole eligibility).[5] These cases necessarily imply that issues which affect a prisoner's term are fundamental issues of liberty that fall within our jurisdiction under 28 U.S. C.A. § 2241 (West 1971). We do not think this is affected by the fact that Barden remains dependent on the discretion of the Bureau.[6] He has, without success, exhausted the means he has available to get the Bureau even to consider his plight. Therefore, judicial action is necessary if he is to have any chance of gaining credit against his federal sentence for the twelve years of his life he spent in state prison, credit he could get if the Bureau decides to designate the state prison as a place of federal confinement.

The Bureau's failure even to consider Barden's claim for relief from possible mistake or inadvertence in failing to designate the state prison as a place of federal confinement carries a serious potential for a miscarriage of justice. Accordingly, the Bureau's error is fundamental and can be corrected through habeas. *See Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (habeas available to avoid potentially serious miscarriage of justice).

We have appellate jurisdiction over Barden's appeal pursuant to 28 U.S.C.A.

§ 1291 (West Supp.1990), and exercise plenary review over the district court's conclusion of law that Barden could not be afforded any relief, the conclusion upon which the district court based its denial of Barden's petition for a writ of habeas corpus. *See Henderson v. Carlson,* 812 F.2d 874, 879–80 (3d Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987).

IV.

On the merits, the question before us is a limited one, namely, whether the district court erred in denying Barden's petition for a writ of habeas corpus because the Bureau, in reviewing Barden's application, mistakenly failed to recognize its power to have a state facility designated *nunc pro tunc* as a place of federal confinement where Barden could gain credit against his federal sentence for the time he served there.

Keohane argues that the district court's ruling should be affirmed because a federal court is without the power to make such a *nunc pro tunc* designation. The power to make a *nunc pro tunc* designation, he notes, is vested solely in the Bureau. Combining the rule that a federal prisoner's sentence does not begin until he is received into federal custody with the rule that concurrency is not presumed in the absence of an agreement between federal and state authorities, Keohane says that Barden is properly in federal custody and must remain there to serve out his twenty-year sentence, unless the Bureau acts. The government's argument that the Bureau has sole power to act collides with the Bureau's failure to recognize any such power in Barden's case, and so these two rules are not dispositive of this case.

In his opening brief, Barden appears to raise a "quasi-equal protection" argument.

**5.** Eleven judges participated in the decision in *Chatman–Bey.* Judge Starr's opinion for the court commanded nine votes. *Chatman–Bey,* 864 F.2d at 805. Judge Robinson filed a concurring opinion joined by one other judge. The concurring judges did not dispute the availability of habeas but thought mandamus was also an available remedy to compel action by prison officials. *Id.* at 815–22 (Robinson, J., concurring).

In light of our decision that Barden is entitled to a writ of habeas corpus, we need not decide

whether mandamus would be available if habeas were not.

**6.** We recognize Barden does not directly pose a legal issue subject to full plenary review by the judiciary, like the issue of how to properly aggregate sentences in *Chatman–Bey.* Rather, Barden is dependent on the Bureau's discretionary power, and, even if the Bureau is ordered to take a look at his situation, he has no assurance of success.

He focuses this argument upon the district court's failure to alter its order denying Barden's habeas petition in response to his Rule 59(e) motion. In the motion for reconsideration, Barden attempted to place evidence before the district court showing that Keohane refused to return to Barden documents that Barden claims would demonstrate that the Bureau granted another prisoner the exact relief Barden seeks under identical circumstances. There is no merit to Barden's equal protection argument.[7]

In his reply brief, Barden renews the argument that the Bureau did not make a "fair" decision in comparison with the action it took on the other prisoner's case, but this time he frames it in terms of due process. Considering the state court's expressed intent that Barden's state sentence should run concurrently with his federal one, Barden claims that his case is peculiarly appropriate for *nunc pro tunc* designation under the Bureau policy. Barden also says that he is entitled to administrative consideration under the statute that affords the Bureau broad discretion to designate and redesignate a federal prisoner's place of confinement. If so, it is unnecessary to treat Barden's claim in terms of substantive due process.

As can be seen, the problem with this case is the common one of correctly framing the issue. Unfortunately, neither the *pro se* claimant nor the Keohane have provided much help in this task. Like ships that pass unseeing in the night, the parties sail past each other's contentions. Their briefs show no disagreement on any particular point except the result. Keohane is correct in his assertion that the federal sentence, as it now stands, cannot be made to run concurrently with the state sentence. *Gomori v. Arnold*, 533 F.2d 871, 875 (3d Cir.), *cert. denied*, 429 U.S. 851, 97 S.Ct. 140, 50 L.Ed.2d 125 (1976). Because Barden's federal sentence did not begin until he was received into federal custody, *see* 18 U.S.C.A. § 3568 (West 1985),[8] Keohane correctly asserts that Barden's federal sentence did not begin until February of 1987. What Keohane does not recognize is that Barden's state incarceration can be credited against his federal sentence if the Bureau, *nunc pro tunc* designates Rockview as the facility where Barden served a portion of his federal sentence.

Seeking *nunc pro tunc* action, Barden seizes upon the language in a Bureau of Prisons Program Statement,[9] issued on July 7, 1989, concerning the designation of a state institution as the place for the service of a federal sentence to argue that the Bureau's refusal to designate the Rockview facility *nunc pro tunc* as a place for service of· his federal sentence violates the Bureau's duty to treat all prisoners fairly.[10]

7. Before remanding to the Bureau, however, the district court should investigate Barden's claim that Keohane has withheld documents that Barden asserts are his. Barden claims that he needs these documents to present his case. If the district court agrees with Barden, it should direct Keohane to turn over to him any documents relevant to his request that the Bureau should favorably consider his application for *nunc pro tunc* designation of the state prison as a place of federal confinement on his federal sentence.

8. This section was repealed in 1986 but was in force in 1975, the date of the imposition of Barden's federal sentence, and therefore is applicable to Barden. Section 3568 read, in part:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. 18 U.S.C.A. § 3568 (West 1985), *repealed by* Comprehensive Crime Control Act of 1984, ch. 58, § 212(a)(2), 98 Stat.1987, *replaced without substantial change by* 18 U.S.C.A. § 3585 *reprinted in* 98 Stat. 2001.

9. "Occasionally, the [federal sentencing] court may recommend concurrent designation when an inmate is received in federal custody long after sentencing." United States Dep't of Justice, Federal Bureau of Prisons, Program Statement 5160.2, at 6 (July 7, 1989) [hereinafter Program Statement]. However, the Program Statement states:

... [T]he final authority to designate concurrent service rests with the Bureau of Prisons. *Id.*

10. We do not understand why both the Bureau and the United States Attorney fail even to rec-

*See* 28 C.F.R. 541.12 (1989) (prisoners are to be treated fairly and impartially by all Bureau personnel). The recent Bureau Program Statement appended to Barden's reply brief further demonstrates the Bureau's own recognition of its ability to make *nunc pro tunc* determinations recognizing state penal facilities as places of federal custody. Barden points out that this statement was issued during the time period between the district court's order denying his habeas petition and the district court's reconsideration of that order, thus making it fully applicable to his case at the time of reconsideration. *Cf. Hill v. Equitable Trust Co.*, 851 F.2d 691, 695 (3d Cir.1988) (citing *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981), and *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)) (usually appellate courts decide cases on the law before them even if it differs from that which existed when the trial court made its decision), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).

While Barden's reliance on the Program Statement to create a due process interest, á la *Hewitt v. Helms*, 459 U.S. 460, 469–72 & n. 6, 103 S.Ct. 864, 870–71 & n. 6, 74 L.Ed.2d 675 (1983), may be misplaced, we nevertheless believe he is correct in his view that under the applicable statute and the circumstances of this case, he is entitled to have the Bureau consider his claim and decide it by exercising the statutory discretion it failed to recognize is available to it. *Farmworker Justice Fund, Inc. v. Brock*, 811 F.2d 613, 619–23 (D.C.Cir.1987) (agency refusal to issue field worker sanitation standard as required by statute is abuse of discretion through inaction). The

Bureau must at least consider his case in accord with the broad statutory authority it has to make such *nunc pro tunc* designations, authority it openly recognizes in general but denies with respect to Barden's case.

As the following analysis shows, that authority antedates the Bureau's recent Program Statement. It therefore becomes unnecessary to consider Barden's retroactivity argument.

Section 4082(b), which was replaced by 18 U.S.C.A. § 3621(b) (West 1985), gave the Attorney General wide discretion in choosing the place of a prisoner's confinement. Former § 4082(b) applied to commitments prior to November 1, 1987. It reads:

> The Attorney General may designate as a place of confinement any available, suitable and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another.

18 U.S.C.A. § 4082(b). Section 4082(b) was replaced by § 3621(b), effective November 2, 1987. Whether former § 4082(b) or present § 3621(b) applies to Barden's case is immaterial because the legislative history of the amendatory act that transferred the power to designate places of confinement from the Attorney General under former § 4082(b) directly to the Bureau under current § 3621(b) shows that the current version was not intended to change pre-existing law with respect to the authority of the Bureau.

Thus, the legislative history of § 3621(b) indicates that the Attorney General had

---

ognize the possibility that Barden may be entitled to relief in light of the statement by a Bureau attorney that the Bureau can make such relief available. Specifically, in a July 28, 1987, letter to the former Trial Chief in the Office of the District Attorney of Beaver County, Pennsylvania, who had handled Barden's case and was now inquiring on his behalf, the Bureau's Assistant Regional Counsel wrote:

> The Bureau can designate the state institution where he served his state sentence as the place of service of the federal sentence nunc

pro tunc, thus giving him credit for some or all of the time he spent there after being sentenced on the federal charges.

Letter from Sheree L. Sturgis to Joseph M. Stanichak (July 28, 1987), *reprinted in* Exhibit H to letter of Joseph M. Stanichak to the United States District Court for the Middle District of Pennsylvania (Jan. 23, 1989). Despite the fact that this statement was made while Barden was still seeking relief from the Bureau, the government has consistently ignored the possibility that this relief might be available to Barden.

designated the Bureau of Prisons as the party that should handle requests concerning former § 4082(b). *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. 141, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3324 (amendment "generally follows existing law, except that custody of Federal prisoners is placed in the Bureau of Prisons *directly* rather than in the Attorney General") (emphasis added); *id.* ("Existing law provides that the Bureau may designate a place of confinement that is available, appropriate and suitable."); *see also Barden v. Keohane,* No. 88–1788, slip op. at 4 (M.D.Pa. June 19, 1989) (noting that designation).[11]

Moreover, whether the Bureau acts under delegated power from the Attorney General in accord with former § 4082(b) or the power now given it by § 3621(b), its discretion to designate a state prison as a place of federal confinement for Barden is not materially affected. This is again shown by the legislative history of § 3621(b). That history states that the listing of factors in § 3621(b) was not intended "to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau, but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations." S.Rep. No. 98–225, 98th Cong., 2d Sess. 141, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3325; *see Darsey v. United States,* 318 F.Supp. 1346 (W.D.Mo.1970). In either case, nothing deprives it of power to make

a *nunc pro tunc* designation. Both U.S.C. and U.S.C.A., in reprinting the former version of § 4082(b) after setting forth its present text, include a heading referring to the former version as "applicable to offenses committed prior to November 1, 1987."

We are not provided with a copy of the Bureau's decision in Barden's case; nevertheless, the portion that the district court quotes demonstrates the Bureau's failure to recognize the statutory discretion it has to grant relief. That quote from the Bureau's decision reads:

> "Because there was no recommendation by the federal judge for concurrent service, the U.S. Marshall Service lodged the judgment and commitment order as a detainer with the state authorities.... [A]lthough Pennsylvania state authorities had directed your state sentence to run concurrently with your federal sentence, the federal sentence was never directed to run concurrent with your state custody. Following state sentencing, the state authorities could have turned you over to federal custody which would have allowed your federal sentence to begin and allowed the state sentence to run concurrently with the federal sentence as recommended by the state judge. Accordingly, *we are unable to retroactively designate* the state facility for concurrent service as you request."

*Barden,* slip op. at 4–5 (emphasis added).

Instead of exercising the discretion the Attorney General had given it under

---

11. Section 3621(b) (West 1985) reads:
    The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the [federal] sentence—
(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.
18 U.S.C.A. § 3621(b) (West 1985).

old § 4082(b), the Bureau concluded it had none because the federal sentencing judge did not order concurrency. This is wrong. It is the federal sentencing court that lacks the power to order concurrency on the facts of this case, not the Bureau. *See* *Gomori*, 533 F.2d at 875. Only the Attorney General or the Bureau, as his delegate, has this power. *Id.* The Program Statement that Barden cites in his reply brief shows that the Bureau now recognizes it has this discretion, though it denied the ability even to consider Barden's request. *See* Program Statement, *supra* note 9, at 2–3, 6–7.

Of course, it is the statute and not the Program Statement that gives the Bureau the power to correct any mistake it may have made with respect to the designation of Barden's place of confinement. However, because the Program Statement seems to fall within the Bureau's statutory authority, it may, on exercising its discretion, wish to follow the guidelines the Program Statement sets forth. *See* Program Statement, *supra* note 9. In that connection, we believe the following comments are appropriate. Since the district judge who imposed the federal sentence on Barden is no longer alive, the Bureau cannot determine whether the sentencing judge would have wanted Barden's federal sentence to run concurrently with whatever sentence Pennsylvania might impose after Barden's return to state custody, as proposed in paragraph three, page one, of the Program Statement.[12] While the statute wisely requires the Bureau to solicit the views of the sentencing judge whenever possible, his decision is not controlling under the statute and his unavailability does not relieve the Bureau of the duty to act in an appropriate case.

Whether Barden's actions while under confinement in both the Pennsylvania and federal prisons, the intent of the state judge that Barden's state sentence be served concurrently with the earlier federal sentence and any other broadly relevant characteristics or circumstances entitle Barden to relief in the form of a *nunc pro tunc* designation of the state prison as a place of federal confinement, even if the failure so to designate it was the result of mistake or inadvertence, is a matter within the Bureau's sound discretion. We hold only that the Bureau has power to grant relief, that Barden is entitled to have the Bureau examine his case and that habeas as authorized by 18 U.S.C.A. § 2241 is an appropriate judicial means of compelling that examination. A redesignation of the state prison where he spent more than ten years as a place of federal confinement plainly would affect the absolute term of his confinement as well as his right to parole. As the Supreme Court wrote in *Peyton*, 391 U.S. at 66, 88 S.Ct. at 1556, "the [habeas] statute does not deny the federal courts power to fashion appropriate relief other than immediate release."

Under the statute and the Bureau's regulations, Barden is entitled to "fair treatment" on his application for *nunc pro tunc* designation of the state facility as a place of confinement for his federal sentence. *See* 28 C.F.R. 541.12 (1989) ("[Inmates] have the right to expect that as a human being [they] will be treated respectfully, impartially and fairly by all personnel.").

## V.

The Bureau has wide discretion to designate the place of confinement for purposes of serving federal sentences of imprisonment. The Bureau's regulations require "fair treatment" of Barden's application. He is not fairly treated when the Bureau refuses to consider his request and denies having the discretion Congress has afforded it. In Barden's case the Bureau failed to recognize its own power because it mistakenly thought that it was solely within the province of the sentencing court to determine concurrency; however, the sen-

---

12. This paragraph reads, in relevant part:
    Ordinarily, the principle [sic] basis for the selection of the non-federal institution is the fact that primary custody resided with the non-federal jurisdiction and it is the sentencing court's intent that the federal sentence be served concurrently with the non-federal sentence.
    Program Statement, *supra* note 9, at 1.

484

tencing court not only was unable to order concurrency because it sentenced Barden before the state did but was actually powerless to do so. *See Gomori*, 533 F.2d at 875. Because of this combination of factors, we hold that Barden is entitled to have his request considered by the agency with the statutory power to grant it and that 28 U.S.C.A. § 2241 is available to compel that consideration. We will therefore vacate and remand the case to the district court for further proceedings in accordance with this opinion.