

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2004

# USA v. Eakman

Precedential or Non-Precedential: Precedential

Docket No. 03-1835

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Eakman" (2004). *2004 Decisions.* Paper 440.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/440

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

———————

No. 03-1835

———————

UNITED STATES OF AMERICA,
                    Appellee

v.

SAMUEL L. EAKMAN, JR.,
                    Appellant

———————

Appeal from the United States District
Court for the Western District of
Pennsylvania
(D.C. Crim. No. 98-cr-00029-2)
District Judge:  Honorable Gary L.
Lancaster

———————

Argued March 11, 2004

Before: SLOVITER and NYGAARD,
Circuit Judges, and SHADUR,[1] District
Judge

(Opinion filed July 12, 2004 )

———————

[1]    Honorable Milton I. Shadur,
United States District Court Judge for the
Northern District of Illinois, sitting by
designation.

Shelley Stark
        Federal Public Defender
Lisa B. Freeland, Esq.  (Argued)
        Assistant Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

        Attorneys for Appellant

Mary Beth Buchanan
        United States Attorney
Christine A. Sanner, Esq.  (Argued)
Bonnie R. Schlueter, Esq.
        Assistant United States Attorneys
633 U.S. Post Office and Courthouse
Pittsburgh, PA 15219

        Attorneys for Appellee

OPINION OF THE COURT

SHADUR, District Judge.

    Federal prisoner Samuel L. Eakman
("Eakman") appeals from the district
court's denial of his 28 U.S.C. § 2255[2]
motion that seeks the vacation or
amendment of his prison sentence.
Eakman claims that his current sentence is
constitutionally invalid because the district
judge relied on a mistaken understanding
of the law in believing that the Bureau of
Prisons ("Bureau") had the discretion to
place him in a community corrections

———————

[2]    All further references to Title 28
provisions will take the form "Section
–."

center (also known as a "halfway-house"), when in fact the Bureau lacked such authority under the law.[3] On the record before us it appears highly likely (at a minimum) that the district court would have imposed a different sentence had it not been for its contrary understanding.

We hold that under such circumstances the sentence imposed violated due process, so that a hearing on Eakman's Section 2255 motion should have been granted. We therefore remand for further proceedings in accordance with this opinion.

## Background

Eakman pleaded guilty on October 30, 1998 to two counts of conspiracy, one pertaining to the possession of anabolic steroids and the other charging money laundering. On September 9, 1999 the court sentenced him to 18 months' imprisonment. For reasons not relevant to this appeal, on July 10, 2000 we issued a nonprecedential opinion (reported in table, 229 F.3d 1139 (3d Cir. 2000)) vacating Eakman's original sentence and remanding the case to the district court for resentencing. On October 20, 2000 the district court imposed a new imprisonment term of one year and a day, with this recommendation to the Bureau:

THIS SENTENCE SHOULD BE SERVED AT

A COMMUNITY CORRECTIONS CENTER WITH THE DEFENDANT BEING GRANTED IMMEDIATE WORK RELEASE STATUS.

On November 7, 2002 (over two years after he was sentenced) Eakman began to serve his prison term at a community corrections center. But on December 13, 2002 the Department of Justice's Office of Legal Counsel issued a memorandum concluding that the Bureau had no statutory authority to assign prisoners to community corrections centers for the imprisonment portion of the sentence. Accordingly the Bureau changed its prior practice and planned to transfer to other facilities all prisoners (including Eakman) who as of December 16, 2002 had more than 150 days remaining on their prison terms.

Eakman then moved the district court to vacate or amend his sentence under Sections 2241 and 2255 and asked for the appointment of counsel.[4] On January 22, 2003 the district court appointed a Federal Public Defender to represent Eakman but denied his Section 2241 and 2255 motions. Eakman sought

---

[3]    More on the latter subject later.

[4]    As the government raises no issue as to Section 2255's one-year statute of limitations, we need not determine whether Eakman's claim fits within that time restriction (Robinson v. Johnson, 313 F.3d 128, 135–37 (3d Cir. 2002)).

2

and obtained a certificate of appealability as to this claim:

> Petitioner's sentence was imposed in violation of his federal constitutional right to due process where (1) this Court relied upon material misinformation when sentencing Petitioner, i.e., that the Bureau of Prisons ("BOP") had the discretion, under 18 U.S.C. § 3621(b), to designate a community corrections center for service of that sentence, and (2) had it been known that the BOP would repudiate the discretion the parties and the Court believed it had, counsel for Petitioner could have advocated for (and the court could have granted) a downward departure that would have resulted in a sentence that [required] Petitioner to serve a year and a day in a community confinement center.

Eakman filed a timely notice of appeal, and the district court released Eakman on bond pending appeal.

### Section 2255 or 2241?

Eakman originally invoked both Sections 2241 and 2255 in the court below, but he limits his challenge on appeal to Section 2255, conceding that the district court did not have jurisdiction under Section 2241 because he failed to serve (or name) his custodian. In response the government argues that only Section 2241 provides a potential source of relief because Eakman essentially contests the place of his imprisonment, not the validity of his sentence. And to be sure, Section 2255 "is expressly limited to challenges to the validity of the petitioner's sentence" and "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence" (Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001)).

But here Eakman does contest the validity of his sentence: He argues that the district court committed an error of law in assuming that the Bureau could lawfully place Eakman in a community corrections center, a mistake that he says fundamentally tainted the sentencing proceeding. Eakman seeks resentencing, not a determination that the Bureau's change in practice was unlawful or an order preventing his transfer from the community corrections center. Hence his claim is suitable for consideration under Section 2255. And because the district court denied Eakman's motion as a matter of law and without a hearing, we review its ruling de novo (United States v. Cleary, 46 F.3d 307, 309–10 (3d Cir. 1995)).

Section 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Because Eakman raises no issues as to the constitutionality or lawfulness of the sentence itself, and because nothing in the record suggests that the district court lacked jurisdiction to impose the sentence, we need decide only whether the record sufficiently demonstrates that Eakman's sentence is "otherwise open to collateral attack."

Error of Constitutional Magnitude

United States v. Addonizio, 442 U.S. 178, 184 (1979), confirms that "[i]t has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Section 2255 permits relief for an error of law or fact only where the error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice" (id. at 185, quoting Hill v. United States, 368 U.S. 424, 428 (1962)). We have applied that teaching by requiring a petitioner who collaterally attacks his

4

sentence based on some error in the sentencing proceeding to allege (1) that the district court received "misinformation of a constitutional magnitude" and (2) that the district judge relied at least in part on that misinformation (United States v. Spiropoulos, 976 F.2d 155, 163 (3d Cir. 1992)).

As the government would have it, Eakman's sentencing proceeding was not fundamentally defective as a matter of law because the district court had no enforceable expectation of Eakman's placement in a community corrections center. At best, argues the government, Eakman alleges that the district court's subjective expectations may have been frustrated, but that does not suffice to show an error of "constitutional magnitude." In that respect the government urges that Eakman's claim is no different from that in Addonizio, where a federal prisoner mounted a collateral attack to his sentence under Section 2255 because post-sentencing the United States Parole Commission significantly modified the weight it placed on several factors in deciding whether to grant parole.[5]

According to the prisoner, he would have been released when he became eligible for parole under the old parole system (the one in effect at the time of his sentencing), but he was instead denied parole twice as a direct consequence of the change in parole policy (442 U.S. at 182).

Both the Addonizio district court and Court of Appeals (incidentally this Court) found the prisoner was entitled to relief under Section 2255 (id. at 183), with the district judge ruling that the Parole Commission's change in policy had thwarted his sentencing expectation by denying the prisoner "the kind of 'meaningful parole hearing' that the judge had anticipated when sentence was imposed" (id.). As the district judge explained, he had expected that the prisoner would be released after serving one-third of his sentence, assuming good behavior, with that "sentencing expectation [being] based on the Court's understanding – which was consistent with generally-held notions – of the operation of the parole system in 1970" (id. at 181 n.3). We affirmed the judgment.

But the Supreme Court reversed, ruling that the prisoner's claim was not cognizable under Section 2255 because "[t]he claimed error here – that the judge was incorrect in his assumptions about the future course of parole proceedings – does not meet any of the established standards of collateral attack" (442 U.S. at 186). Although the Court recognized that a lawful sentence may be set aside under Section 2255 if it is based on

---

[5] Addonizio actually involved the claims of not one but three prisoners, but it presented the facts only as to one of them, both to sharpen the focus of the legal issues and because the claims of the other two prisoners were identical (442 U.S. at 179–80). We follow that lead and refer only to the prisoner whom the Supreme Court discussed in its opinion.

"misinformation of constitutional magnitude," it held that "there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge" (id. at 187). As the Court continued (id. at 187-88):

> As a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment. The record made when Judge Barlow pronounced sentence against Addonizio, for example, is entirely consistent with the view that the judge then thought that this was an exceptional case in which the severity of Addonizio's offense should and would be considered carefully by the Parole Commission when Addonizio became eligible for parole. If the record is ambiguous, and if a § 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing.

Addonizio, id. at 190, found that opening sentences to collateral attack based on a court's expectations about when a prisoner is likely to be released would be at odds with Congress' delegation of authority to the Parole Commission to determine whether and when prisoners should be released:

> [T]he judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. Nothing in § 2255 supports – let alone mandates – such a frustration of congressional intent.

In sum, Addonizio refused to expand habeas relief beyond "objectively ascertainable errors" to errors that would, to paraphrase Skycom Corp. v. Telstar

Corp., 813 F.2d 810, 814 (7th Cir. 1987), "invite a tour through [the judge's] cranium, with [the judge] as the guide." Instead the error must be "objectively ascertainable" in the sense that it can be determined from the record and also in the sense that it does not depend on assessing the particular intention of the sentencing judge.

Some district courts that have faced claims like the one at issue here have attempted to distinguish Addonizio on the basis that petitioners in those cases have expressly asserted a constitutional basis for their collateral attacks, while the prisoner in Addonizio failed to articulate such a basis for his claim. For instance, Pearson v. United States, 265 F.Supp.2d 973, 980 (E.D. Wis. 2003) observed that "petitioner's claim is explicitly based on the Due Process Clause, unlike that of the defendant in Addonizio, who asserted no constitutional basis for his motion" (see also Smith v. United States, 277 F.Supp.2d 100, 107-08 (D. D.C. 2003); Culter v. United States, 241 F.Supp.2d 19, 26-27 n.7 (D. D.C. 2003)). We find that distinction problematic. Surely those cases cannot suggest that Addonizio added a heightened pleading standard to Section 2255 motions (see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002)). As Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004) observes:

> Swierkiewicz has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result.

And Section 2255 certainly does not contain such a requirement. All that a Section 2255 petitioner must do is to allege (and eventually prove) that the sentencing court committed an error of constitutional magnitude and that the error influenced the sentence.

Addonizio, 442 U.S. at 186, rejected the petitioner's motion not because of some pleading mistake, but rather because it concluded that a sentencing court's expectations about the future course of discretionary parole proceedings cannot give rise to an error of constitutional magnitude. If Eakman's motion presented no more than a similar allegation – that the district judge expected the Bureau to exercise its discretion to require Eakman to serve his sentence at a community confinement center, but the Bureau did not conform to that expectation – his motion would meet the same fate, because (as the government correctly states) the Bureau has the exclusive authority to determine the place of imprisonment under 18 U.S.C. § 3621(b) (see United States v. Serafini, 233 F.3d 758, 777-78 (3d Cir. 2000)).

But that is not Eakman's contention. Instead he asserts that the district judge believed the Bureau could lawfully place him in a community corrections center when, according to the

government, 18 U.S.C. § 3621(b) never gave the Bureau the legal authority to do so. Unlike Addonizio, Eakman does not challenge his sentence on the basis that the district judge made a bad predictive judgment about how his sentence would be executed – he rather argues that the court misunderstood the law.

King v. Hoke, 825 F.2d 720 (2d Cir. 1987), provides some guidance on that score. There the Second Circuit granted habeas relief where the sentencing court relied on a flawed understanding of the law as to when the prisoner would be eligible for parole (id. at 724-25). King, id. at 725, distinguished Addonizio:

> In Addonizio the sentencing judge had made an incorrect prediction of how the Parole Commission would exercise its discretion. By contrast, in the pending case, the sentencing judge made an "objectively ascertainable error," [Addonizio, 442 U.S.] at 187, about King's minimum statutory parole eligibility date, a matter of law rather than a prediction concerning an agency's discretion.

We agree with King and hold that Addonizio does not control where, as here, a prisoner alleges that the district court made an error of law that can be ascertained from the record.[6] In fact, it is hard to imagine how a sentence could ever be deemed fair when there is some way to verify the sentencing court's error externally (whether an error of fact or an error of law) and when that error caused the misguided sentence.

Because such objectively ascertainable errors that a sentencing court has materially relied upon will always be of "constitutional magnitude," the appropriate test inquires whether (1) the district court made an objectively ascertainable error (one that does not require courts to probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence.[7] If the answer to both questions is "yes," then – unless the record conclusively shows that

------

[6]   We note that Atehortua v. Kindt, 951 F.2d 126, 129-30 (7th Cir. 1991), contains a dictum that appears to look in the opposite direction. Atehortua suggests that a petitioner may be out of luck even where the government, the defendant and the district court judge were all clearly mistaken about the parole consequences of a sentence based on an improper application of the statute governing parole.

[7]   Framing the first part of the two-prong test in this way states the material requirements for Section 2255 relief more succinctly, but it does not materially change the analysis from our earlier opinions.

the prisoner is not entitled to relief – the prisoner is entitled to a hearing. And if the court determines after the hearing that the error did indeed result in a miscarriage of justice, it must vacate the sentence and resentence the prisoner.

### Objectively Ascertainable Error

Indisputably the district judge believed the Bureau had the authority to place Eakman in a community confinement center, for otherwise the judge's recommendation to that effect would have been pointless. And if as the government contends the Bureau did not actually have the legal authority to assign prisoners to community confinement centers, the judge clearly committed an error of law. In that respect the government misses the point in calling upon Serafini, 233 F.3d at 777-78, and United States v. Jalili, 925 F.2d 889, 894 (6th Cir. 1991), to urge that the district court's recommendation cannot be used to invalidate Eakman's sentence because it had no binding authority, over the Bureau as to the place of imprisonment. After all, Eakman does not contend that his sentence violates due process because the Bureau has ordered him to serve time at an institutional prison despite the court's recommendation otherwise. Instead he argues that a material misunderstanding of the law (as plainly evidenced by the court's recommendation) rendered his sentencing proceeding invalid.

Because neither Eakman nor the government challenges the Bureau's interpretation of its own legal authority, and because the Bureau is not a party to this action, we prescind the question whether the Department of Justice's view, adopted by the Bureau, is correct. We rather assume arguendo that the Bureau never had the legal authority to place Eakman in a community confinement center, so that the district court erred in believing differently. But it is certainly worth observing that if it were otherwise, the Bureau's decision to repudiate its own discretion under the statute would raise serious ex post facto concerns (U.S. Const. art. I, § 9 cl. 3; see Culter, 241 F.Supp.2d at 24-25 n.6; Ashkenazi v. Attorney Gen., 246 F.Supp.2d 1, 9 (D. D.C. 2003), vacated as moot, 346 F.3d 191, 192 (D.C. Cir. 2003)).[8] That clause protects against retroactive changes in the law that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" (Garner v. Jones, 529 U.S. 244, 250 (2000), quoting California Dep't of Corrections v. Morales, 514 U.S. 499, 509

---

[8] We are mindful that according to United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), we would lack jurisdiction to decide the ex post facto issue under Section 2255 – that Eakman would rather have had to present such a claim via Section 2241. We raise the ex post facto issue only to note that the government would likely have to travel a perilous road even if we were to reject (as we have not for purposes of this opinion) the Bureau's pronouncement of its own legal authority.

9

(1995)).

Although the government takes the position that the Bureau's former practice was unlawful, it argues that the Bureau did not change the applicable law when it announced its new procedure, but merely conformed its practice to a number of holdings that "community confinement" cannot constitute imprisonment under United States Sentencing Guideline § 5C1.1 (see, e.g., Serafini, 233 F.3d at 777-78; United States v. Adler, 52 F.3d 20, 21 (2d Cir. 1995) (per curiam); United States v. Swigert, 18 F.3d 443, 445 (7th Cir. 1994); Jalili, 925 F.2d at 892-93)). But the government does not suggest how that fact helps it respond to Eakman's due process claim. No case of which we are aware has ever relied on such a notion to deny a collateral challenge to a sentence based on due process, for due process clearly guarantees all defendants the right to be sentenced under an accurate understanding of the law (United States v. Barnhart, 980 F.2d 219, 225 (3d Cir. 1992)).[9] And the

---

[9] Even in the ex post facto context Weaver v. Graham, 450 U.S. 24, 29 (1981), explains that "a law need not impair a 'vested right' to violate the ex post facto prohibition." Instead the absence of fair notice is the essential inquiry under the Ex Post Facto Clause (id. at 30). And as several district courts have observed, the Bureau gave no advance warning that it would abruptly change its former practice, which had been in place for decades, of placing

record before us unequivocally shows the district judge did not contemplate the total absence of Bureau discretion, an absence as to which the parties now concur. We conclude that Eakman's Section 2255 motion has sufficiently alleged that the district judge made an objectively ascertainable error during his sentencing proceeding.

Reliance

As the government would have it, Eakman must demonstrate (1) that the Bureau made some express assurance to the district court that it would honor its recommendation to place Eakman in a community confinement center and (2) that the district court would have imposed a lighter sentence had it not been misled. We reject the notion that Section 2255 requires a petitioner to satisfy such an onerous burden – certainly not before the sentencing court conducts a hearing. Section 2255 is clear in its directive that the sentencing court must grant a prompt hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is not entitled to relief. . . ." To be sure, a prisoner is not entitled to a hearing unless there is some basis in the record to support the prisoner's contention that the district court relied at least in part

---

some prisoners in community confinement centers (see, e.g., United States v. Serpa, 251 F.Supp.2d 988, 992 (D. Mass. 2003) and Ashkenazi, 246 F. Supp. 2d at 7)).

10

on bad information, and at the hearing the prisoner retains the burden to demonstrate that he is entitled to relief (see Barnes v. United States, 579 F.2d 364, 366 (5th Cir. 1978); Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)). To that end it is enough for the prisoner to show that the district court paid sufficient heed to the error that the integrity of the sentencing proceeding is called into doubt (Spiropoulos, 976 F.2d at 163; King, 725 F.2d at 724).

There is plainly enough in the record to entitle Eakman to a hearing. As we have already discussed, the district judge specifically recommended that the Bureau place Eakman in a community confinement center, with an obvious awareness of the Bureau's longstanding practice of entertaining such recommendations. Clearly the district judge acted under a legal misapprehension – a belief in the existence of the Bureau's discretion in that respect. Indeed, the district judge had already granted the government's motion under Guideline § 5K1.1 for a downward departure, and he could have departed further had he been properly informed of the Bureau's lack of discretion to assign Eakman to community confinement.

## Conclusion

Eakman's Section 2255 motion sufficiently raises a constitutional question about the fairness of his sentencing proceeding. And because the record does not "conclusively show that the prisoner is entitled to no relief," the statute expressly compels a hearing to determine whether the judge in fact relied upon his mistaken belief that the Bureau had the discretionary authority to assign Eakman to a community confinement center. We therefore remand the case to the district court to conduct a hearing as provided under Section 2255. Should the district judge confirm such mistaken reliance, he is ordered to vacate Eakman's current sentence and resentence him.

---

11