Robert BECKLEY,

v.

Jonathan MINER, et al., Respondents–Appellants.

No. 04–4081.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1 on Feb. 3, 2005.

Decided Feb. 3, 2005.

Robert Beckley, Fairton, NJ, pro se.

Peter G. O'Malley, Office of United States Attorney, Newark, NJ, Richard A. Olderman, Barbara L. Herwig, Peter R. Maier, United States Department of Justice Civil Division, Washington, DC, for Appellant.

Nancy Winkelman, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, pro se.

Jennifer A.L. Battle, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, pro se.

Before: BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

The Bureau of Prisons ("Bureau") challenges two orders entered by the district court directing it to incarcerate Petitioner–Appellant in specific types of correctional facilities. The first order enjoined the Bureau to transfer Petitioner to a facility providing a Residential Drug Abuse Treatment Program ("RDAP"). The second, a temporary restraining order, enjoins the Bureau from transferring Petitioner to a high security facility. Because the district court lacked jurisdiction to enter the orders, we will reverse.

## I. FACTS

Petitioner Robert Beckley was sentenced on March 17, 2003 to 44 months in prison for credit card fraud. While at the medium-security Fairton correctional facility, Petitioner was eligible for, and was on the waiting list to participate in, RDAP. Among other things, RDAP affords wardens the discretion to reduce an inmate's sentence by up to one year upon successful completion of the program. Because no part of the incentive is mandatory, reduction in an inmate's sentence or amount of time served is not guaranteed.

While on the waiting list, Petitioner was relocated to Fairton's Special Housing Unit ("SHU") as a consequence of several disciplinary violations involving weapons or

violence, including possession of a weapon, assaulting another inmate, fighting, and threatening bodily harm. At about the same time, Petitioner obtained and then volunteered information to prison officials about prison gang activity. This prompted the Bureau to continue to house Beckley in the SHU for his personal safety.

Because assignment to the SHU precludes participation in RDAP, Fairton's warden recommended that Beckley be transferred to a new facility, as Beckley had himself requested several times. The Regional Office of the Bureau rejected the transfer on disciplinary grounds. Instead of administratively pursuing his transfer to the Bureaus' Central Office, pursuant to the Bureau's Administrative Remedy Program, 28 C.F.R. Part 542, Petitioner filed a habeas corpus petition in district court. Petitioner claimed a right to be transferred so that he could attend RDAP.

The district court ordered a transfer on October 6, 2004. The Bureau, moving for reconsideration under Fed.R.Civ.P. 59(e), argued Beckley's disciplinary problems warranted his transfer to a high security facility that would not have RDAP. In response, Petitioner moved for a temporary restraining order. On October 18, 2004, the district court issued an order barring the transfer of Petitioner to such a facility. Subsequently, we granted the Bureau's motion for a stay pending appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court premised its jurisdiction upon the habeas corpus statute, 28 U.S.C. § 2241, and, alternatively, the mandamus statute, 28 U.S.C. § 1361. On appeal, *amicus* appointed by the Court on behalf of Petitioner additionally contends jurisdiction was also proper under 28 U.S.C. § 1331. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 (1971). We must satisfy ourselves of our own jurisdiction, *McNasby v. Crown Cork and Seal Co.,* 832 F.2d 47, 49 (3d Cir.1987), as well as the jurisdiction of the district court. *See Pomper v. Thompson,* 836 F.2d 131, 132 (3d Cir.1987). We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Our review of the dispositive jurisdictional question is necessarily *de novo,* as is our review of the district court's authority to review the discretionary decision of the Bureau. *See McNasby,* 832 F.2d at 49; *Barden v. Keohane,* 921 F.2d 476, 479 (3d Cir.1990).

## III. ANALYSIS

### A. Mandamus Jurisdiction

■ 28 U.S.C. § 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." It is undisputed by the parties and *amicus* that the "duty must be clear and nondiscretionary for mandamus to issue," *Cheney v. United States Dist. Court,* —— U.S. ——, 124 S.Ct. 2576, 2584, 159 L.Ed.2d 459 (2004), and that the issue in this case falls within the Bureau's discretion. *See, e.g., United States v. Jackson,* 70 F.3d 874, 878 (6th Cir.1995) (observing "the Bureau has broad authority to manage the enrollment of prisoners in drug abuse treatment programs" and holding district court lacked authority to order defendant's participation in drug treatment program while incarcerated).

As such, we do not discern, nor have we been cited to, any mandatory duty, statutory or otherwise, that the Bureau owes Petitioner. *Amicus* perceives such a duty in statutory language requiring that "[t]he Bureau shall make available appropriate substance abuse treatment" for each pris-

oner the Bureau determines is eligible. 18 U.S.C. § 3621(b); *see also* 18 U.S.C. § 3621(e)(5)(B) (establishing eligibility requirements). However, there are two operative words in this provision: not only the mandatory word "shall" that *amicus* identifies, but also the discretionary word "appropriate." The latter returns the subject to the discretion of the Bureau, affording it, for example, latitude to determine *when* during incarceration a program like RDAP is most compatible with other factors such as the inmates' conduct in custody and his safety with respect to the general prison population. The record before us does not show that Petitioner has been precluded from participation in RDAP at all times during the rest of his lawful incarceration period; rather only that participation (and a transfer to facilitate such participation) is not appropriate now. In sum, because a right to treatment is not the right to attend a program at a particular time, we do not believe the district court had jurisdiction under 28 U.S.C. § 1361.

### B. Habeas Corpus Jurisdiction

■ Next we consider whether Petitioner's request for relief may invoke habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241. We believe the question here has been addressed by our decision in *Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir.2002), for two reasons. First, "[w]hatever the decision" on Petitioner's request for a transfer to have access to RDAP, his "release date will not change." *Id.* The opportunity here to participate in a program that carries with it only the potential for a discretionary sentence reduction is fundamentally different than incentive systems such as those in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), where an inmate was entitled to earn and redeem good behavior credits which directly impacted sentence length.

Petitioner here seeks only " 'a ticket to get in the door' " of a drug treatment program that, even if completed to perfection, still affords the Bureau complete discretion to require Petitioner to serve his full sentence. *Leamer*, 288 F.3d at 543 (quoting *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir.1997)).

Second, and more fundamentally, Petitioner does not contest the legality of his conviction, "the validity of the continued conviction[,] or the fact or length of a sentence." *Leamer*, 288 F.3d at 542. What is left is essentially a "condition of confinement" because the relief sought "would not alter [Petitioner's] sentence or undo his conviction." *Id.* at 544. As such, the district court lacked jurisdiction under the habeas corpus statute to hear Petitioner's complaint. *Leamer*, 288 F.3d at 543; *see also DeWalt v. Carter*, 224 F.3d 607, 617 (7th Cir.2000) (concluding petitioner could not pursue habeas action where petitioner "did not challenge the fact or duration of his confinement, but only a condition of his confinement-the loss of his prison job").

In reaching this conclusion, we observe that *Barden, supra*, is distinguishable on its facts. In *Barden*, the Bureau, claiming it lacked discretion Congress had plainly delegated to it, refused to even hear a prisoner's complaint about a sentencing mistake. *Id.*, 921 F.2d at 483–84. That is indisputably not the case here. Further, the relief requested in *Barden* would have necessarily reduced a 22–year sentence by ten years. Thus the Bureau's refusal to hear the prisoner was a situation "carry[ing]" a serious potential for a miscarriage of justice. *Id.* at 479. There is no such risk here. Petitioner's participation in RDAP later during his incarceration (as opposed to now) does not create a potential for a miscarriage of justice. No matter when Petitioner participates, the Bu-

reau indisputably retains full discretion to make him serve his entire sentence.

For all of these reasons, we conclude that the district court lacked jurisdiction under the habeas corpus statute as well.

### C. Bivens Jurisdiction

█ Finally, we consider the third potential basis for jurisdiction, 28 U.S.C. § 1331; *see also Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Jurisdiction over challenges to a prisoner's conditions of confinement may be brought pursuant to this statute subject to the limitations imposed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. PLRA § 1997e(a), in turn, requires exhaustion of administrative remedies. *Nyhuis v. Reno,* 204 F.3d 65, 78 (3d Cir.2000).

Our review of the record shows the Bureau has an established procedure allowing for administrative review of inmate complaints through its Administrative Remedy Program, codified at 28 C.F.R. Part 542. Review occurs at three levels: first, the Warden; second, the Regional Office; finally, the Central Office. *Id.* The record shows that Petitioner pursued his transfer request at only the first two levels. He then filed for relief in district court after rejection by the Regional Office, instead of pursuing his case administratively to the Central Office, as required by 28 C.F.R. Part 542. We disagree with the district court and *amicus* that these facts constitute "substantial" exhaustion sufficient to satisfy the statute. *Nyhuis,* 204 F.3d at 77–78. For purposes of jurisdiction, it is insufficient that, as the district court framed it, "the matter was thoroughly investigated and went to a high level in the [Bureau] before it was turned down." We believe the third level of administrative review, that of the Bureau's Central Office, was still required, as its role in the process

of administrative review is not rendered superfluous by either of the considerations observed by the district court. *See* 28 C.F.R. Part 542. The lack of exhaustion pursuant to § 1997e thus also precludes jurisdiction pursuant to 28 U.S.C. § 1331.

### D. Abuse of Discretion

█ Assuming *arguendo* that the district court did have jurisdiction to hear Petitioner, reversal is still required. It is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners. *See, e.g., United States v. Eakman,* 378 F.3d 294, 300 (3d Cir.2004); *United States v. Williams,* 65 F.3d 301, 307 (2d Cir.1995); *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); 18 U.S.C. § 3621(b). That said, *amicus* observes that the Bureau's discretion is limited by the right to substantive due process. *See, e.g., Block v. Potter,* 631 F.2d 233, 234 & 236 n. 2 (3d Cir.1980) ("all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons" including "frivolous criteria with no rational relationship to the purpose of parole").

*Amicus* is correct, but the application of the due process clause in this case is unwarranted. The record reveals that the Bureau's decision with respect to Petitioner's transfer status and classification was neither frivolous nor without rational relationship to valid penal concerns. Our review of the record shows that, notwithstanding Petitioner's undisputed eligibility for RDAP, the Bureau has had non-frivolous, rational reasons for housing him in Fairton's SHU since November 2003. First, the record provides foundation for the Bureau's determination that Petitioner

was a security risk, as established by his undisputed record of misconduct in prison. Later, the record provides foundation for the Bureau's determination that Petitioner was himself at risk, as established by his voluntary decision to inform prison officials about gang activity within the general prison population. Even if the Bureau misperceived Petitioner's need for safety, to err on the side of protecting an inmate who has become a prison gang informant is neither arbitrary nor without rational basis, especially in the penal context. *Cf. Hunterson v. DiSabato,* 308 F.3d 236, 246–47 (3d Cir.2002) (holding in context of habeas review of parole board decision that the level of arbitrariness required in order to find a substantive due process violation is egregious action or inaction that is "conscious shocking" or "deliberately indifferent."). The actions of the Bureau in this case do not rise to that level, and are also plainly distinguishable from *Barden,* in which, as discussed, the Bureau refused to even entertain a prisoner complaint. *See Barden,* 921 F.2d at 477–78.

The October 18, 2004 temporary restraining order must also fall for the reasons set forth herein. We have considered the remaining arguments advanced by the parties and conclude that no further discussion is necessary. As the district court lacked jurisdiction to hear Petitioner's complaint, the orders of the district court will be reversed.