# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2010

No. 09-11026

Lyle W. Cayce
Clerk

ISAAC LEIGH HUNTER,

Petitioner - Appellant

v.

REBECCA TAMEZ, Warden, Federal Correctional Institution - Fort Worth,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Isaac Leigh Hunter, federal prisoner # 35789-180, appeals from the district court's denial of his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Hunter filed his § 2241 application in an effort to challenge the decision of the Federal Bureau of Prisons ("BOP") to deny him credit, through a nunc pro tunc order, against his federal sentence for time served in Texas state custody on unrelated state convictions.  Specifically, Hunter argues that the BOP's denial of credit violates the United States Constitution in that the decision (1) violates principles of federalism by failing to give effect to the instruction of the state sentencing judge that Hunter serve his state sentence concurrently with his federal sentence, and (2) runs contrary to the separation

of powers doctrine by allowing the executive branch of the federal government, rather than the judicial branch, to determine the length of his sentence.

While we acknowledge the concerns expressed by other circuits regarding the BOP's policies for determining whether to credit time served for a state sentence against a subsequent federal sentence, we conclude that none of those concerns are present here. The district court correctly denied Hunter's application, and its judgment is therefore AFFIRMED.

## I. Facts & Procedural History

Hunter was arrested by officers of the City of Hillsboro, Texas, Police Department on March 13, 2003 and charged with retaliation. After being released on bond on this charge, Hunter was again arrested on July 13, 2003, by Hillsboro police and charged with aggravated assault with a deadly weapon; he was retained in state custody at that point.

Acting pursuant to a search warrant issued in connection with the aggravated assault charge, law enforcement officers searched Hunter's home and discovered 19.51 grams of crack cocaine. On August 12, 2003, Hunter was indicted in the United States District Court for the Western District of Texas on a charge of possession with intent to distribute more than five grams of crack cocaine. State authorities transferred Hunter to temporary federal custody pursuant to a writ of habeas corpus ad prosequendum on August 26, 2003. Hunter pleaded guilty to the single federal charge and was sentenced to eighty-seven months imprisonment on that charge on February 11, 2004. The district judge was silent as to whether the federal sentence was to run concurrently with or consecutively to any future state sentence. After sentencing, Hunter was transferred back to state custody.

Hunter pleaded no contest in state court to the retaliation and assault charges. On June 28, 2004, pursuant to a plea agreement, the state judge sentenced Hunter to four years imprisonment on each count, to run concurrent

## No. 09-11026

with each other and with Hunter's federal sentence. The state court also credited Hunter with 466 days against his retaliation sentence and 338 days against his assault sentence for time spent in custody, including in federal custody, prior to sentencing. Hunter was transferred to the Texas Department of Criminal Justice, Institutional Division, and began serving his state sentence.

On August 18, 2006, while Hunter was in state prison, a United States Probation Officer advised Hunter in writing that his service in state custody should be credited against his federal sentence pursuant to the terms of his state sentence.[1]

On July 26, 2007, Hunter completed his state term of imprisonment and was delivered into the custody of the BOP. At that time, the BOP credited none of Hunter's state sentence against his federal sentence. Hunter filed an application for writ of habeas corpus in the United States District Court for the Northern District of Texas seeking credit against his federal sentence for the time he spent in state custody. In response, the BOP initiated administrative proceedings to determine whether to designate nunc pro tunc the state prison as the place of service of Hunter's federal sentence pursuant to the procedure devised by the Third Circuit in *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990).[2] Hunter consequently withdrew that habeas corpus application, and the district court dismissed it without prejudice. As part of the *Barden* procedure, the BOP contacted the federal district judge who imposed Hunter's federal sentence to

---

[1] The sequence of events as pled by Hunter belies any suggestion that Hunter relied in any respect on the probation officer's letter in entering his state plea.

[2] As we recently explained in *Pierce v. Holder*, "[w]here a federal sentence was imposed before a state sentence, the BOP may indirectly award credit for time served in state prison by designating nunc pro tunc the state prison as the place in which the prisoner serves a portion of his federal sentence." No. 08-50435, 2010 WL 3093307, at *1 (5th Cir. Aug. 9, 2010) (citing *Barden*, 921 F.2d at 480 and *Rodriguez v. Pitzer*, 76 F. App'x 519, 520 (5th Cir. 2003) (unpublished)); *see also* BOP Program Statement 5160.05, ¶ 9(b)(4) (explaining nunc pro tunc procedure).

ascertain whether that judge intended the federal sentence to run consecutively to or concurrently with the state sentence. The district judge notified the BOP that he had no opinion on the question. After reviewing the statutory factors, the BOP ultimately denied Hunter nunc pro tunc designation and rejected his administrative appeal of that decision.

On June 15, 2009, Hunter filed a second application for a writ of habeas corpus—the subject of this appeal—in the United States District Court for the Northern District of Texas, where he is confined. The district court correctly construed this filing as a § 2241 habeas corpus application. *See United States v. Gabor*, 905 F.2d 76, 77–78 (5th Cir. 1990). After the federal warden's response and Hunter's traverse were filed, the district court evaluated and denied the application. The district court entered final judgment and purported, sua sponte, to deny a certificate of appealability ("COA"). However, as Hunter pointed out in filings made in this court, "[a] COA is not required to appeal the a denial of a § 2241 petition." *Pack v. Yusuff*, 218 F.3d 448, 451 n.3 (5th Cir. 2000). The district court consequently vacated its order denying a COA. We have jurisdiction over Hunter's timely appeal pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

We review de novo the district court's denial of a § 2241 habeas corpus application on the pleadings. *Pack*, 218 F.3d at 451. We may affirm the district court's denial of relief on any ground supported by the record. *See Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000); *see also Davis v. Quintana*, 334 F. App'x 633, 634 (5th Cir. 2009) (unpublished) (applying general rule of *Scott* to § 2241 context); *Edge v. Stalder*, 83 F. App'x 648, 648 (5th Cir. 2003) (unpublished) (same).

## III. Discussion

Hunter's pro se § 2241 application and briefing before this court make what can be characterized as two distinct arguments regarding his entitlement

to a credit, through the *Barden* nunc pro tunc procedure, against his federal sentence for time served in state prison.  First, Hunter argues that the BOP's refusal to give effect to the state sentencing court's express intention that his state sentence run concurrently with his federal sentence violates, at least in the absence of a contrary order from the federal sentencing court, constitutional principles of federalism.  Second, Hunter argues that the fact that the BOP, an executive branch agency of the Department of Justice, holds the effective power to determine whether his state and federal sentences should run concurrently violates the constitutional principle of the separation of powers between the judicial and executive branches.  After a thorough analysis, we conclude that the circumstances of this case, analyzed under the Constitution and relevant precedents, do not support reversal.

A.    *Federalism*

Hunter argues that the principles of federalism and comity between the state and federal government as dual sovereigns require the BOP to give effect to the state sentencing court's direction that his term of imprisonment on his state conviction run concurrently with his already-imposed term of imprisonment on his federal conviction.  This argument is foreclosed by our circuit's precedent.  In *Leal v. Tombone*, we rejected essentially the same argument, citing and quoting decisions of the Second, Seventh, Ninth, and Tenth Circuits that addressed in substantial detail the questions of federalism posed by exactly this scenario.  341 F.3d 427, 428–30 & nn. 13 & 19 (5th Cir. 2003) (per curiam) (citing and quoting *Taylor v. Sawyer*, 284 F.3d 1143 (9th Cir. 2002); *Jake v. Herschberger*, 173 F.3d 1059, 1066 (7th Cir. 1999); *Del Guzzi v. United States*, 980 F.2d 1269, 1270 (9th Cir. 1992); *Bloomgren v. Belaksi*, 948 F.2d 688, 690–91 (10th Cir. 1991); *Pinaud v. James*, 851 F.2d 27, 30 (2d Cir. 1988)).  We quoted with particular approval the Tenth Circuit's decision in *Bloomgren*, which held in no uncertain terms that "'the determination by federal authorities

that [the defendant's] federal sentence would run consecutively to his state sentence is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained state conviction.'" *Leal*, 341 F.3d at 429 (quoting 948 F.2d at 691). The Eighth Circuit has, since *Leal*, joined those circuits, *see Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007) ("It is well-settled that the state court's intent is not binding . . . ."). The Ninth Circuit has, moreover, recently reaffirmed its decision in *Taylor*. *See Reynolds v. Thomas*, 603 F.3d 1144, 1148–49 (9th Cir. 2010). Hunter cites no contrary circuit authority. We must, therefore, reject this argument.

B.    *Separation of Powers*

Hunter next contends that it violates the doctrine of separation of powers for the BOP, the Attorney General's designee and an executive-branch agency of the Department of Justice, to hold, through its nunc pro tunc authority, the power to determine whether his state and federal sentences should run concurrently. Hunter argues that the authority to determine a federal prisoner's sentence rests exclusively with the judicial branch and that it is improper for an arm of the branch of government that prosecuted him to be charged with determining part of his sentence. Hunter relies on decisions from the Second and Eighth Circuits expressing concerns about the propriety of this mechanism, and the district court here agreed that such concerns exist. *See Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005); *Fegans*, 506 F.3d at 1104.[3] But Hunter ignores the fact that, pursuant to the sentencing statutes and our circuit's precedent, his request to the BOP for a nunc pro tunc designation is tantamount to a request for post-sentencing *leniency*, which is, in the scheme of American government, the proper domain of the executive branch, not the

---

[3] One judge in the Ninth Circuit recently expressed similar reservations. *See Reynolds*, 603 F.3d at 1160 (Fletcher, J., concurring).

judicial branch. There is, therefore, no separation of powers problem presented by the facts of this case.

This conclusion flows from two premises. First, Hunter was effectively sentenced to a consecutive sentence. As we explained in *Free v. Miles*, "[w]ell-settled federal law presumes that when multiple terms of imprisonment are imposed at different times, they will run consecutively unless the district court specifically orders that they run concurrently. . . . The district court must specify in its sentencing order that sentences run concurrently; otherwise, they run consecutively." 333 F.3d 550, 553 (5th Cir. 2003) (citing 18 U.S.C. § 3584(a)). As in *Free*, the district court here offered no opinion as to whether Hunter's sentences should run consecutively or concurrently, and, "[a]ccordingly, [his] state and federal sentences ran consecutively, because the district court did not specify otherwise." *Id.*[4] Second, inasmuch as Hunter was properly sentenced to a consecutive term of eighty-seven months of federal imprisonment, his request to the BOP for a nunc pro tunc designation that would effectively reduce his term of imprisonment can properly be regarded as a request for clemency. The Constitution unquestionably vests the discretionary power to commute a sentence in the executive branch. *See* U.S. CONST. art. II, § 2, cl. 1; *see, e.g.*, *Schick v. Reed*, 419 U.S. 256, 266-68 (1974). As the Court explained in *Schick*,

> [a] fair reading of the history of the English pardoning power, from which our Art. II, § 2, cl. 1, derives, of the language of that clause itself, and of the unbroken practice since 1790 compels the conclusion that the power flows from the Constitution alone, not from any legislative enactments, and that it cannot be modified, abridged, or diminished by the Congress. Additionally,

---

[4] We also note that, under this circuit's precedent, the district court is permitted to order a federal sentence to run consecutively or concurrently to an anticipated subsequent state sentence at the time of the federal sentencing. *See United States v. Brown*, 920 F.2d 1212, 1217 (5th Cir. 1991) (per curiam). Courts in certain other circuits are barred from doing so by their precedent, which may contribute to the concerns those circuits have expressed. *See Reynolds*, 603 F.3d at 1158–59 (Fletcher, J., concurring).

considerations of public policy and humanitarian impulses support an interpretation of that power so as to permit the attachment of any condition which does not otherwise offend the Constitution. The plain purpose of the broad power conferred by § 2, cl. 1, was to allow plenary authority in the President to "forgive" the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable.

419 U.S. at 266; *see also, e.g.*, Daniel T. Kobil, *The Quality of Mercy Strained: Wresting the Pardoning Power from the King*, 69 TEX. L. REV. 569, 575–604 (1991) (tracing the development of the federal clemency power in the executive branch from its historical origins). Taking these two principles together, we find no separation of powers problem on the facts of this case: Hunter was sentenced, albeit implicitly, to a consecutive federal sentence and then asked the BOP to effectively reduce his sentence *below* that actually imposed by the judicial branch. The BOP declined. Contrary to Hunter's arguments, it was, in the constitutional scheme of the United States Constitution, entirely proper for an executive branch agency to be charged with the discretionary authority to handle Hunter's request for clemency in the administration of his sentence.[5]

C.    *Voluntariness of State Plea*

Hunter finally suggests in passing that the BOP's failure to credit the time that he served as a state prisoner against his federal sentence seriously undermines the voluntariness of his guilty plea in state court. He argues that all parties to the state proceeding, including the state sentencing judge, understood that his state sentence would run concurrently with his federal sentence, and that Hunter's guilty plea was predicated on this understanding.

---

[5] The BOP's decision to deny a request for nunc pro tunc designation in the face of a federal sentence ordered to run *concurrently* with a state sentence would, of course, present a very different situation. *Cf. Schick*, 419 U.S. at 267 ("Of course, the President may not aggravate punishment . . . ."). But that is simply not the case before us.

While possibly true, the voluntariness of Hunter's state plea is, as he appears to acknowledge, not a proper subject of this § 2241 proceeding because Hunter is no longer "in custody" on his state conviction as that section requires. *See Maleng v. Cook*, 490 U.S. 488, 491–92 (1989); 28 U.S.C. § 2241(c). Whatever may be the proper remedy—if any exists—to the asserted defects in Hunter's state plea, this § 2241 habeas corpus application is not that.

## IV. Conclusion

For the reasons stated above, the district court's judgment denying the appellant's application for writ of habeas corpus is AFFIRMED.