# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70003

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2014

Lyle W. Cayce
Clerk

EDGAR ARIAS TAMAYO,

Plaintiff – Appellant

v.

RICK PERRY, Governor; RISSIE OWENS, Chairwoman of the Texas Board of Pardons and Paroles; ROMULO CHAVEZ, Board Member; JUANITA M. GONZALEZ, Board Member; DAVID GUTIERREZ, Board Member; JAMES LAFAVERS, Board Member; MICHELLE SKYRME, Board Member; CYNTHIA TAUSS, Board Member,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:14-CV-31

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Appellant Edgar Arias Tamayo ("Tamayo") is scheduled to be executed by the State of Texas on January 22, 2014. Tamayo filed a complaint in the district court asserting a 28 U.S.C. § 1983 claim against several members of the Texas Board of Pardons and Paroles (the "Defendants") alleging that the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70003

state's clemency procedures do not comport with fundamental fairness and violate his Eighth and Fourteenth Amendment rights. He also filed a motion seeking either a temporary restraining order ("TRO") or a preliminary injunction in the district court to prevent the Texas Board of Pardons and Paroles (the "Board") from voting on his application and the Governor from acting on any negative recommendation of the Board. Accompanying his discovery requests, Tamayo also filed a motion to stay his execution. After a hearing, the district denied the request for preliminary injunctive relief and the alternative request for a stay. We AFFIRM the denial of the preliminary injunction and DENY the application for a stay.

Factual and Procedural History

Tamayo and Jesus Mendoza were arrested in the parking lot of a bar in Harris County, Texas, on January 31, 1994, for robbing a patron. After the men were searched and handcuffed, Officer Guy Gaddis of the Houston Police Department placed them in a patrol car, with Tamayo seated behind Officer Gaddis. When Officer Gaddis stopped to make a phone call, Tamayo revealed to the other passenger that he had a gun in his waistband. The evidence at trial showed that Tamayo managed to remove the gun from his waistband despite the fact that he was handcuffed. When Officer Gaddis returned to the vehicle and drove away, Tamayo shot Officer Gaddis multiple times. The patrol car crashed into a residence, and Tamayo escaped through a broken window. The police were called to the scene and captured Tamayo as he ran down the street near the crash, still handcuffed. Officer Gaddis was taken to the hospital immediately, but he was pronounced dead upon arrival.

Tamayo gave two written statements admitting that he had the gun in the police car, that he shot Officer Gaddis, and that he knew Gaddis was a police officer. At trial, the evidence indicated that Tamayo, rather than Mendoza, was the shooter. The State also presented evidence that Tamayo

No. 14-70003

had purchased the gun several days before the murder. The jury found Tamayo guilty of capital murder and subsequently sentenced him to death. Tamayo appealed to the Texas Court of Criminal Appeals ("CCA"), which affirmed his conviction. *Tamayo v. State*, No. AP-72,033 (Tex. Crim. App. Dec. 11, 1996) (not designated for publication).

In February 1998, Tamayo sought state habeas relief based on ineffective assistance of counsel for failing to investigate evidence of organic brain damage. The CCA rejected Tamayo's claim in June 2003. *Ex parte Tamayo*, No. WR-55,690-01 (Tex. Crim. App. June 11, 2003) (not designated for publication).

In September 2003, Tamayo filed his federal habeas application, reasserting his ineffective assistance of counsel claim based on counsel's failure to investigate the alleged organic brain injury. Tamayo moved to stay the proceedings in 2005 to allow him to return to state court to present additional claims, including two claims under the Vienna Convention on Consular Relations (the "Vienna Convention"), Apr. 24, 1963, 21 U.S.T. 77, and a claim that he was ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). The state court dismissed these successive habeas petitions as an abuse of the writ. *See Ex parte Tamayo*, No. WR-55690-04, 2010 WL 2332395 (Tex. Crim. App. June 9, 2010) (not designated for publication) (*Atkins* Claim); *Ex parte Tamayo*, No. WR-55690-03, 2008 WL 2673775 (Tex. Crim. App. July 2, 2008) (not designated for publication) (Vienna Convention Claim); *Ex parte Tamayo*, No. WR-55,690-02 (Tex. Crim. App. Sept. 10, 2003) (not designated for publication) (Vienna Convention Claim).

Tamayo amended his federal habeas petition, adding his Vienna Convention and *Atkins* claims. In March of 2011, the federal district court denied Tamayo federal habeas relief on his claims and determined that he was not entitled to a COA. *Tamayo v. Thaler*, No. 4:03-cv-3809 (S.D. Tex. Mar. 25,

No. 14-70003

2011). Tamayo then sought a COA from this court, which we denied in December of 2011. *Tamayo v. Thaler*, No. 11-70005 (5th Cir. Dec. 21, 2011). The Supreme Court denied Tamayo's petition for certiorari in November of 2012. *Tamayo v. Thaler*, 133 S. Ct. 608 (2012). On September 17, 2013, in response to the state's motion, the 209th Harris County District Court scheduled Tamayo to be executed on January 22, 2014.

On December 13, 2013, Tamayo filed a written application for clemency with the Board. Tamayo argues in his application that his death sentence should be commuted to life imprisonment because, *inter alia*, he did not receive his consular rights guaranteed under the Vienna Convention,[1] he should not receive the death sentence on account of his alleged mental retardation, and he did not receive a fair trial because the key witness against him—Jesus Mendoza—was coached by the state and the expert who testified concerning the gunshot residue on his hands has been subsequently discredited.

On January 13, 2014, Tamayo filed the present action in federal district court asserting a § 1983 claim that the Board's procedures violate his due process rights. He further sought a TRO or preliminary injunction preventing the Board from voting and the Governor from acting on the Board's recommendation pending the outcome of his lawsuit. He further sought a stay of execution pending his discovery requests in connection with his § 1983 claim.

---

[1] In connection with this claim, Tamayo points out that United States Secretary of State John Kerry sent a letter to Governor Perry requesting that Tamayo's execution be delayed until it is determined whether Tamayo was prejudiced by the denial of his consular rights under the Vienna Convention. He explained that Texas's non-compliance with the consular notification provision of the Vienna Convention is potentially damaging to the United States' interests abroad and could "impact the way American citizens are treated in other countries." We take no position on this issue, but to observe that the Supreme Court has determined that while "the *Avena* decision . . . constitutes an international law obligation on the part of the United States," the President does not have the authority to compel Texas to comply with the decision. *Medellin v. Texas*, 552 U.S. 491, 504 (2008).

4

No. 14-70003

The same day, Tamayo filed a successive habeas petition in Texas state court, alleging that he did not receive a fair trial in light of alleged newly discovered evidence that the Harris County District Attorney's office coached Mendoza by "instruct[ing] him how he was to testify, and what he should—and should not—say."[2]  On January 16, 2014, Tamayo filed another successive habeas petition in Texas state court, arguing that his sentence of death is "illegal and unconstitutional" based on his alleged mental retardation.  In support of this claim, he relied on the newly-released decision of the Inter-American Commission on Human Rights ("Human Rights Decision").  The Human Rights Decision concluded, *inter alia*, that Tamayo has raised evidence that he is mentally retarded and the denial of his consular notification rights prejudiced him.  In connection with this successive habeas petition, Tamayo filed a request for a stay of execution in light of what he believes are novel issues of law—including the amount of deference, if any, that should be given the Human Rights Decision by Texas state courts.  The CCA denied relief.  *Ex parte Tamayo*, Nos. WR-55,690-05, WR-55,690-06, 2014 Tex. Crim. App. Unpub. LEXIS 59, at *3 (Tex. Crim. App. Jan. 21, 2014) (not designated for publication).

Following a hearing on January 21, 2014, before the federal district court in this § 1983 action, the district court concluded that "the Board's procedures provided Tamayo adequate due process in conformance with current Supreme Court and Fifth Circuit precedent." *Tamayo v. Perry*, 1:14-CV-31 (W.D. Tex. Jan. 21, 2014).  The court accordingly denied the application for a temporary restraining order and preliminary injunction and the alternative request for a stay of execution.

---

[2] We have no opportunity here to consider Tamayo's successive habeas petition and, therefore, take no position as to the veracity of this serious allegation.

No. 14-70003

Discussion

A district court's denial of a stay of execution and of a preliminary injunction is reviewed for abuse of discretion. *See Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012). To be entitled to a preliminary injunction or a stay of execution, Tamayo must show "a substantial likelihood of success on the merits." *See Adams*, 679 F.3d at 318 (stay of execution); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (preliminary injunction).

As an initial matter, we acknowledge our prior caselaw holding that federal courts lack authority to issue stays of execution pending resolution of a § 1983 claim. *See Beets v. Tex. Bd. of Pardons & Paroles*, 205 F.3d 192, 193 (5th Cir. 2000) ("This court has twice held that federal courts lack jurisdiction under § 1983 to stay executions."); *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999) ("[W]e reiterate this court's recent holding that federal courts lack jurisdiction to stay executions under § 1983 . . . ."); *Moody v. Rodriguez*, 164 F.3d 893, 893 (5th Cir. 1999) ("Federal courts lack jurisdiction to stay executions under § 1983." (citation and quotation marks omitted)). These cases, however, were premised on the principle that the only action available to a prisoner to challenge any aspect of his conviction or sentence was the habeas process under 28 U.S.C. § 2254 and related statutes. Arguably that principle, however, no longer applies in cases such as this one that do not directly challenge the conviction but instead challenge something that does not "necessarily imply the unlawfulness of the State's custody." *Skinner v. Switzer*, 131 S. Ct. 1289, 1293 (2011) (alteration, citation, and quotation marks omitted) (holding that a § 1983 action is available to a defendant seeking to challenge a state's procedures for DNA testing). Indeed, in *Skinner*, the Court granted a stay of execution. *Skinner v. Switzer*, 559 U.S. 1033 (2010). Since that case, we have exercised jurisdiction over appeals regarding stays of execution

6

arising in § 1983 cases. *See, e.g., Sepulvado v. Jindal*, 729 F.3d 413, 420–21 (5th Cir. 2013) (a § 1983 case evaluating a district court's grant of a preliminary injunction and stay on its merits). We need not reach this issue, however, because we conclude that we clearly have jurisdiction over the denial of the preliminary injunction, and the same merits analysis underlies both forms of relief sought by Tamayo.

Our analysis of Tamayo's claim is governed by our decision in *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343 (5th Cir. 1999). In *Faulder*, we assessed a death-row inmate's § 1983 claim alleging that Texas's clemency proceedings violated his due process rights.[3] Relying on *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998), we explained that Texas's clemency proceedings satisfied the "minimal procedural safeguards" required in such proceedings. *See Faulder*, 178 F.3d at 344. We observed that these safeguards are violated only where "a state official 'flipped a coin' to determine whether to grant clemency, or the state arbitrarily denied a prisoner any access to its clemency process." *Id.* at 344 (quoting *Woodard*, 523 U.S. at 289 (O'Conner, J., concurring)). Applying this standard, we concluded that Texas's clemency proceedings provided "minimal procedural safeguards." *Id.* at 344–45. According to the uncontested evidence presented by the state, Texas's clemency proceedings have not changed in any substantial way since *Faulder*. Therefore, to the extent Tamayo brings a facial challenge to the Texas

---

[3] Subsequent to our decision in *Faulder*, the Supreme Court recognized the right of prisoners to bring § 1983 claims complaining of unconstitutional state action when such actions would not "necessarily imply" the invalidity of the prisoner's conviction. *See Skinner*, 131 S. Ct. at 1298–99. Because a challenge of a state's clemency proceeding in no way implies that the prisoner's conviction was invalid, *Skinner* applies such that Tamayo may bring a § 1983 claim challenging the constitutionality of a state's clemency proceedings. *Faulder*, 178 F.3d at 344.

No. 14-70003

procedures, under *Faulder*, Tamayo cannot prove that he has a likelihood of success in his § 1983 challenge of the clemency proceedings.

Tamayo argues that we should revisit *Faulder* in light of "evolving standards of decency," primarily relying on studies and reviews such as one conducted by the American Bar Association.  We respect these sources, but we are bound by our court's rule of orderliness which mandates that one panel cannot overrule a prior panel in the absence of an intervening change in the law in the form of a Supreme Court opinion, an en banc opinion of this court, or a statutory or regulatory change.  *See Jacobs v. Nat'l Drug Intelligence Ctr.,* 548 F.3d 375, 378 (5th Cir. 2008).  "Evolving standards of decency" are not a ground upon which we can disregard prior precedent.  *See id.*

Tamayo suggests that *Faulder*'s "minimal procedural safeguard" standard is no longer binding because subsequent Supreme Court decisions have suggested that an inmate is entitled to a higher level of review of state clemency proceedings.  However, the two cases cited by Tamayo in support of this position are inapposite.  First, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne* involved a due process challenge concerning DNA testing in the context of post-conviction relief, which is different from an inmate challenging the executive's clemency proceedings.  *See* 557 U.S. 52, 56 (2009); *see also Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("Unlike probation, pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.").  Second, *Harbison v. Bell* did not involve a due process challenge to clemency proceedings, but rather interpreted a federal statute to allow for federal appointment and compensation of attorneys in state clemency proceedings. *See* 556 U.S. 180, 183-84 (2009).  We conclude that we are bound by *Faulder*.

8

No. 14-70003

The district court did not abuse its discretion in concluding that Tamayo failed to show that he had a substantial likelihood of success in his § 1983 claim.  In his complaint, Tamayo argued that the Board violated his due process rights in at least two respects.

First, he points out that Title 37 of the Texas Administrative Code provides that "[u]nless required for the disposition of matters authorized by law, hearing officers, board members and parole commissioners assigned to render a decision or to make findings of fact and conclusions of law in an individual case may not communicate, directly or indirectly, in connection with any issue of fact or law with any party, except on notice and opportunity for all parties to participate."  37 Tex. Admin. Code § 147.3.  He alleged, based on information and belief, that certain Defendants have communicated with interested parties (including the Harris County District Attorney, the Houston Police Department, and the Harris County Sheriff's Department) concerning his application without providing him notice or an opportunity to participate.  Notably, Tamayo asserts that he subsequently requested to view information submitted in opposition to his application.  The Board denied this request and he argued to the district court that the failure to provide him with the information "violates fundamental fairness and creates an impermissible risk that the Board's decision will rest on false or misleading information."  The district court ordered that the Board comply with Tamayo's discovery request for his clemency file by submitting that file in camera to that court.[4]  Upon review of that file, the district court concluded that the Board does not "operate

---

[4] The court ordered these materials produced in camera because the Board is prohibited by law from releasing this information to Tamayo pursuant to Tex. Gov't Code §§ 508.313(a)(1)-(3) and 552.101, which together provide that information obtained and maintained by the Board concerning an inmate subject to executive clemency is confidential and can only be released in limited circumstances not relevant here.

in any way that significantly differs from how it operated at the time of *Faulder*."

Second, Tamayo requested that Defendant Romulo Chavez, who is a member of the Board, disqualify himself from voting on his clemency proceeding pursuant to Title 37 of the Texas Administrative Code, which provides that a member of the Board should disqualify himself when, *inter alia*, the individual's impartiality may be questioned or the individual has personal bias concerning the subject matter. 37 Tex. Admin. Code § 150.55. Since Tamayo filed this complaint, the Board has filed a letter from Mr. Chavez voluntarily recusing himself from Tamayo's case. Accordingly, although not directly addressed in the district court's opinion, we conclude that this challenge is moot.

To the extent Tamayo challenges the Board's proceedings as applied to him, he has failed to demonstrate that those proceedings do not provide him with "minimal procedural safeguards." The Board's refusal to allow Tamayo to review his records does not rise to the level of a "coin-flip adjudication" that we described in *Faulder*. Indeed, these practices do not result in any arbitrary denial of Tamayo's access to Texas's clemency process.

We conclude that he has failed to show a substantial likelihood that he could demonstrate the Board violated its policies. Section 147.3 allows communication with parties interested in clemency proceedings so long as the Board provides "notice and opportunity for all parties to participate." Tamayo clearly has notice of the proceedings and he has been given an opportunity to participate through his filing of an application for clemency and a supplemental application of clemency, as well as his attorneys' ongoing contact with the Board's general counsel.

Concluding that the Board provided Tamayo the required "minimal procedural safeguards," we recognize our narrow role in the uniquely executive

No. 14-70003

task of considering clemency and, therefore, express no further opinion regarding Texas's clemency proceedings.  *See Woodard*, 523 U.S. at 280-81 (Rehnquist, C.J., concurring) ("[T]he heart of executive clemency . . . is to grant clemency as a matter of grace, thus allowing the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations."); *Hunter v. Tamez*, 622 F.3d 427, 431 (5th Cir. 2010) ("The Constitution unquestionably vests the discretionary power to commute a sentence in the executive branch.").

## Conclusion

The district court did not abuse its discretion in denying relief to Tamayo in this case.  Therefore, we AFFIRM the district court's denial of relief; his associated request for stay of execution is DENIED.